**KINLEY CORPORATION, Appellee,**

v.

**IOWA UTILITIES BOARD, UTILITIES DIVISION, DEPARTMENT OF COMMERCE, Appellant.**

**Office of Consumer Advocate, Appellant.**

**Nos. 92–2063, 92–2146.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 17, 1993.

Decided July 19, 1993.

---

1. The Hon. Edward J. McManus, Senior United States District Judge for the Northern District of Iowa.

Diane C. Munns, Des Moines, IA, argued (Susan Allender, James R. Maret, Ronald C. Polle, on brief), for appellant.

Helen C. Adams, Des Moines, IA, argued (Philip E. Stoffregen, on brief), for appellee.

Before McMILLIAN, MAGILL and LOKEN, Circuit Judges.

McMILLIAN, Circuit Judge.

Appellants Iowa Utilities Board (IUB) and the Office of Consumer Advocate (OCA) appeal from a final judgment entered in the District Court[1] for the Southern District of Iowa holding that the Hazardous Liquid Pipeline Safety Act of 1979 (HLPSA), 49 U.S.C. App. § 2001 *et seq.*, expressly preempted Iowa Code ch. 479 (1991) with respect to interstate hazardous liquid pipelines. *Kinley Corp. v. Iowa Utilities Board,*

No. 4–90–CV–80687, 1992 WL 526745 (S.D.Iowa Apr. 3, 1992) (*Kinley* ). For reversal appellants argue the district court erred in holding that (1) the HLPSA expressly preempted the safety provisions of Iowa Code ch. 479 and (2) the non-safety provisions of Iowa Code ch. 479, including the hearing, permit and inspection provisions, as well as the environmental and damage remedies provisions, were not severable from the safety provisions. For the reasons discussed below, we affirm the judgment of the district court.

The underlying facts are not disputed. Appellee Kinley Corp. owns and operates an interstate hazardous liquid pipeline extending some 13 miles from an Amoco Oil Co. terminal facility located near Council Bluffs, Iowa, to Offutt Air Force Base in Bellevue, Nebraska. The pipeline is 4 inches in diameter and transports aviation jet fuel. Aviation jet fuel is a petroleum product and thus a "hazardous liquid" for purposes of the HLPSA. 49 U.S.C.App. § 2001(2)(A). The pipeline was constructed in April 1968 and was purchased by Kinley after construction had begun but before it was completed. Neither the company that constructed the pipeline nor Kinley ever applied for a Chapter 479 state pipeline permit until 1988. Chapter 479 establishes a comprehensive state program supervising the intrastate and interstate transportation by pipeline of solid, liquid or gaseous substances, with the exception of water and interstate natural gas,[2] in order to protect the safety and welfare of the public. In July 1987 IUB, formerly the Iowa State Commerce Commission, became aware of the existence of the pipeline (the Nebraska Fire Marshal's office had asked IUB whether IUB had any information about the pipeline), and in August 1987 IUB inspected the pipeline. Donald Stursma, an IUB staff engineer, was a member of the inspection team.

On September 21, 1987, Stursma wrote a letter to Kinley asserting IUB jurisdiction over the pipeline under Iowa Code ch. 479

1. The Honorable Charles R. Wolle, Chief Judge, United States District Court for the Southern District of Iowa.

2. State regulation of interstate natural gas pipelines was held expressly preempted by the Natural Gas Pipeline Safety Act, 49 U.S.C.App. § 1671 *et seq.,* in *ANR Pipeline Co. v. Iowa St. Commerce Comm'n,* 828 F.2d 465 (8th Cir.1987) (*ANR* ).

and directing Kinley to apply to the IUB for a state pipeline permit. After Stursma reminded Kinley again to file an application for a state pipeline permit or face civil penalties, Kinley filed an application for a state pipeline permit on March 16, 1988.

In June 1989 IUB issued an administrative order directing Kinley to show cause why civil penalties should not be assessed for noncompliance with Chapter 479 and IUB's administrative regulations. In April 1990 IUB denied Kinley's application for a state pipeline permit and ordered Kinley not to operate the pipeline in Iowa or to replace portions thereof, and assessed civil penalties.

In May 1990 IUB reopened the record and Kinley filed a motion to dismiss on the ground that the IUB lacked jurisdiction over the pipeline because the HLPSA preempted Iowa Code ch. 479, except for provisions about inspection fees (Iowa Code § 479.14–.16) and authorizing the IUB to act as an agent for the federal government (*id.* § 479.-33). In September 1990 IUB denied the motion to dismiss. In December 1990 Kinley filed this action against IUB in federal district court seeking a declaration that Iowa Code ch. 479 had been preempted by the HLPSA with respect to interstate hazardous liquid pipelines and an injunction prohibiting IUB from taking any further action to enforce Chapter 479 against it. The district court later allowed OCA to intervene as a party defendant.

DISTRICT COURT DECISION

The case was submitted to the district court on stipulated facts. The district court held that Iowa Code ch. 479 was expressly preempted by the HLPSA, 49 U.S.C.App. § 2002(d), as well as inconsistent with the comprehensive regulatory scheme established by the HLPSA, and was therefore invalid under the Supremacy Clause of the United States Constitution. *Kinley,* slip op. at 3–5, *citing ANR Pipeline Co. v. Iowa State Commerce Comm'n,* 828 F.2d 465 (8th Cir.1987) (*ANR* ) (holding Iowa Code ch. 479 preempted with respect to interstate natural gas pipelines). The district court also held that the non-safety provisions of Chapter 479 were not severable from the safety provisions. *Kinley,* slip op. at 4. The district

court denied injunctive relief. *Id.* at 5. Both IUB and OCA appealed, and the cases were consolidated for purposes of appeal.

PREEMPTION

Appellants acknowledge that the safety provisions of Chapter 479 were preempted by the HLPSA. Brief for Appellants at 8. However, they argue that the non-safety provisions, specifically the financial responsibility provisions designed to protect the state's farmland and topsoil from damage due to construction, operation and maintenance of pipelines and to guarantee payment of property and environmental damages, were not preempted. Appellants also argue the *ANR* decision is not controlling here because the federal statutes regulating natural gas pipelines and hazardous liquid pipelines are not comparable. We disagree.

■ "[T]he Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that 'interfere with, or are contrary to,' federal law." *Hillsborough County v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 712, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985), *citing Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 211, 6 L.Ed. 23 (1824) (Marshall, C.J.). Congressional intent is the critical question in any preemption analysis. *Louisiana Public Service Comm'n v. FCC,* 476 U.S. 355, 369, 106 S.Ct. 1890, 1899, 90 L.Ed.2d 369 (1986); *see, e.g., Howard v. Uniroyal, Inc.,* 719 F.2d 1552, 1559 (11th Cir.1983).

Under the Supremacy Clause, federal law may supersede state law in several different ways. First, when acting within constitutional limits, Congress is empowered to pre-empt state law by so stating in express terms. In the absence of express pre-emptive language, Congress' intent to pre-empt all state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation. Pre-emption of a whole field also will be inferred where the field is one in which "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."

**358**

Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when "compliance with both federal and state regulation is a physical impossibility," or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. at 713, 105 S.Ct. at 2374 (citations omitted).[3]

In the present case, we need look no further than the express statutory language. The HLPSA contains the following express preemption provision: "No State agency may adopt or continue in force any safety standards applicable to *interstate* pipeline facilities or the transportation of hazardous liquids associated with such facilities." 49 U.S.C.App. § 2002(d) (emphasis added). We agree with the district court that this is a case involving express preemption and that Congress has expressly stated its intent to preempt the states from regulating in the area of safety in connection with interstate hazardous liquid pipelines. For this reason, the state cannot regulate in this area and Chapter 479 is invalid to the extent it purports to do so.

When Congress has considered the issue of pre-emption and has included, in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a "reliable indicium of congressional intent with respect to state authority," "there is no need to infer congressional intent to pre-empt state laws from the substantive provisions" of the legislation.

*Cipollone v. Liggett Group, Inc.*, —— U.S. ——, ——, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992), *citing Malone v. White Motor Corp.*, 435 U.S. 497, 505, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978), *and California Federal Savings & Loan Ass'n v. Guerra*, 479 U.S. 272, 282, 107 S.Ct. 683, 690, 93 L.Ed.2d 613 (1987) (Marshall, J.). Nonetheless, we note that the legislative history of the HLPSA, especially when considered with the Natural Gas Pipeline Safety Act (NGPSA), 49 U.S.C.App. §§ 1671–1686, further demonstrates Congress's intent to preempt state safety regulation of interstate hazardous liquid pipelines. In 1979, at the same time the NGPSA was amended to cover liquified natural gas, Congress also enacted the HLPSA. The HLPSA established federal safety regulation over the transportation of hazardous liquids by pipeline and defined "hazardous liquid" to include petroleum and petroleum products, 49 U.S.C.App. §§ 2001(2)(A), 2002(*l*). In enacting the HLPSA, Congress intended to "establish a statutory framework similar to the NGPSA to regulate transportation of hazardous liquids by pipeline." S.Rep. No. 182, 96th Cong., 1st Sess., *reprinted in* 1979 U.S.C.C.A.N. 1971, 1975.

We agree with the district court that this case is controlled by the *ANR* decision. *ANR* involved a preemption challenge to the application of Chapter 479 to an interstate natural gas pipeline partially located in Iowa. The specific issue was whether, and to what extent, the NGPSA preempted Chapter 479. We held that the NGPSA expressly preempted virtually all of the provisions of Chapter 479 which dealt with safety regulation of interstate natural gas pipelines. 828 F.2d at 468–73. The NGPSA express preemption

---

3. Preemption traditionally comes in four "flavors": (1) "express preemption," resulting from an express Congressional directive ousting state law (*Morales v. Trans World Airlines, Inc.*, —— U.S. ——, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992)); (2) "implied preemption," resulting from an inference that Congress intended to oust state law in order to achieve its objective (*Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)); (3) "conflict preemption," resulting from the operation of the Supremacy Clause when federal and state law actually conflict, even when Congress says nothing about it (*Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 143, 83 S.Ct. 1210, 1218, 10 L.Ed.2d 248 (1963)); and (4) "field preemption," resulting from a determination that Congress intended to remove an entire area from state regulatory authority (*Fidelity Fed. Savs. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982)). *See Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190, 203–04, 103 S.Ct. 1713, 1721–22, 75 L.Ed.2d 752 (1983); *see generally* Burt Neuborn, *An Overview of Preemption* (Fed.Jud.Center, Feb. 9, 1993). The present case involves express preemption.

provision, 49 U.S.C.App. § 1672(a)(1) ("[n]o State agency may adopt or continue in force any such standards [referring to state safety standards for intrastate pipelines] applicable to interstate transmission facilities"), at issue in *ANR* is virtually identical to the HLPSA express preemption provision, 49 U.S.C.App. § 2002(d) ("[n]o State agency may adopt or continue in force any safety standards applicable to interstate pipeline facilities or the transportation of hazardous liquids associated with such facilities"), at issue in the present case. We think the preemption analysis in *ANR* is persuasive.

Appellants also argue that, even though the HLPSA has preempted the state's authority in terms of substantive safety regulation of interstate hazardous liquid pipelines, Kinley was not denied a state pipeline permit for safety reasons but because it was unable to meet the financial responsibility requirement, Iowa Code § 479.26. The September 21, 1987, letter from IUB to Kinley does not support this position. In that letter IUB stated that "although state safety authority has been impacted by federal legislation, we maintain a strong interest in the safety and integrity of the pipelines operating in Iowa." In addition, although admittedly speculative, the timing of IUB's enforcement action against Kinley suggests that IUB decided to act only after IUB had approached the federal Office of Pipeline Safety about the Kinley pipeline and that office had declined to take any action.

■ Appellants also argue that Chapter 479 is valid because it is a gap-filling state regulation. Appellants argue that because transportation of a hazardous liquid through pipelines that operate at a stress level of 20% or less of the specified minimum yield strength of the line pipe are exempt from federal safety and accident reporting requirements, 49 C.F.R. § 195.1(b)(3) (1992), Chapter 479 permissibly fills this gap in the federal regulatory scheme. We disagree. The decision of the Department of Transportation to exempt certain pipelines from federal regulation does not necessarily mean that the state can step in and impose its own regulations. "[A] federal decision to forego regulation in a given area may imply an authoritative federal determination that the area is best left *unregulated,* and in that event would have as much pre-emptive force as a decision *to* regulate." *Arkansas Electric Cooperative Corp. v. Arkansas Public Service Comm'n,* 461 U.S. 375, 384, 103 S.Ct. 1905, 1912, 76 L.Ed.2d 1 (1983); *see Lipscomb v. Transac, Inc.,* 749 F.Supp. 1128, 1131 (M.D.Ga.1990) (ERISA preemption of state law claims). Here, Congress granted exclusive authority to regulate the safety of construction and operation of interstate hazardous liquid pipelines to the Secretary of the Department of Transportation. This Congressional grant of exclusive federal regulatory authority precludes state decision-making in this area altogether and leaves no regulatory room for the state to either establish its own safety standards or supplement the federal safety standards. *ANR,* 828 F.2d at 472; *see Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Comm'n,* 461 U.S. 190, 212, 103 S.Ct. 1713, 1726, 75 L.Ed.2d 752 (1983).

## SEVERABILITY

Appellants next argue that the district court erred in holding that the non-safety provisions of Chapter 479 were not severable from the safety provisions. Appellants argue that the hearing, permit and inspection provisions, as well as the environmental and damage remedy provisions, are severable from the preempted safety provisions. Appellants further argue that because the HLPSA does not establish a comprehensive federal permit scheme for hazardous liquid pipelines, the state hearing, permit and inspection provisions, as well as the environmental protection and damage remedies provisions, are not preempted. We disagree.

■ "The severability of the valid portions of a state statute which is otherwise found constitutionally infirm is a matter of state law." *ANR,* 828 F.2d at 473, *citing Exxon Corp. v. Eagerton,* 462 U.S. 176, 196–97, 103 S.Ct. 2296, 2309, 76 L.Ed.2d 497 (1983). We review de novo district court determinations of state law. *Salve Regina College v. Russell,* 499 U.S. 225, 231–32, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). We agree with the district court that this

issue was resolved by the *ANR* decision. In *ANR* we held that the hearing, permit and inspection provisions of Chapter 479 as it existed in 1987, which are essentially identical to the hearing, permit and inspection provisions in the current Chapter 479,[4] were preempted by the NGPSA because those provisions purported to afford the state the opportunity to review and place safety conditions upon the construction of interstate natural gas pipelines. 828 F.2d at 473. *ANR* recognized that Iowa law appeared to favor severability, *id., citing* Iowa Code Ann. § 4.12 (West Supp.1987), *and Rush v. Sioux City,* 240 N.W.2d 431, 446 (Iowa 1976), and also held that the environmental and damage remedy provisions could not be severed from the preempted hearing, permit and inspection provisions and thus could not be saved. 828 F.2d at 473. Because the former Chapter 479, which was at issue in *ANR,* is virtually identical to the current Chapter 479, we think *ANR* is controlling here. Accordingly, we hold that the hearing, permit and inspection provisions of Chapter 479 are so related to federal safety regulations that they are preempted by the HLPSA with respect to interstate hazardous liquid pipelines. We also hold that the environmental and damage remedies provisions are not severable from the preempted hearing, permit and inspection provisions and thus are preempted as well.

PIPELINE SAFETY ACT OF 1992

■ On October 24, 1992, President Bush signed the Pipeline Safety Act of 1992 (1992 Act), Pub.L. No. 102–508, 106 Stat. 3289. The 1992 Act amended several federal statutes, including the HLPSA. We requested supplemental briefs from the parties on the impact, if any, of the 1992 Act on the arguments on appeal. We conclude that the 1992 Act does not affect our analysis. The 1992 Act did not amend 49 U.S.C.App. § 2002(d) with respect to interstate hazardous liquid pipelines. The 1992 Act did amend the HLPSA to include safety standards to protect the environment, Pub.L. No. 106–508, Title II, §§ 201, 202, 106 Stat. 3289, 3299–01

(amending 49 U.S.C.App. § 2002(a), (b)), but we think the addition of new factors to be considered by the Secretary of Transportation expands, rather than restricts, federal regulation of interstate hazardous liquid pipelines and thus is consistent with federal preemption.

Accordingly, we affirm the judgment of the district court.

regulate interstate natural gas pipelines with respect to environmental and economic damages. *See* Iowa Code ch. 479A (1991).

---

4. After the decision in *ANR,* the state legislature amended Chapter 479 to exclude interstate natural gas pipelines and enacted Chapter 479A to