SOUTHSIDE REAL ESTATE DEVELOPERS, INC., Appellant,

v.

PIKE COUNTY FISCAL COURT, Appellee.

No. 2008–CA–001534–MR.

Court of Appeals of Kentucky.

Sept. 4, 2009.

Lawrence R. Webster, Pikeville, KY, for appellant.

R. Roland Case, Pikeville, KY, for appellee.

Before LAMBERT, MOORE, and VANMETER, Judges.

## OPINION

VANMETER, Judge.

A county fiscal court's authority to sell real property is governed by KRS [1] 67.080 and 67.0802. The issue we address in this case is whether the Pike Circuit Court erred in its determination that the Pike County Fiscal Court's failure to comply with the requirements of the latter statute prevents Southside Real Estate Developers, Inc. from maintaining an action to compel a conveyance from the Fiscal Court. Finding no error, we affirm.

---

1. Kentucky Revised Statutes.

## I. Factual Background.

The facts giving rise to this controversy are neither complicated nor disputed. In the 1980s, the United States government undertook a Flood Control Project[2] in Pike County, which included the purchase of a number of small tracts of property.[3] In an agreement dated August 1, 1983, the Fiscal Court agreed "not to convey or otherwise dispose of any land ownership within the Project area without written approval" of the United States. In 1998, after completion of the Project, the United States conveyed to the Fiscal Court a number of small parcels, including one designated as "Tract No. 1839," a 0.37–acre piece of property located adjacent to U.S. Route 119.

In 2002, Pike County magistrate Stirl E. Harris approached the federal government about the possibility of one of his constituents obtaining Tract No. 1839 in exchange for another tract, which purportedly would be more suitable for wildlife habitat mitigation than Tract No. 1839. Harris presented this matter to the Fiscal Court at a meeting on December 16, 2002. Following a discussion, as reflected in the Fiscal Court's minutes, the following motion was made, seconded and approved:

THE PIKE COUNTY FISCAL COURT HEREBY AUTHORIZES an exchange of mitigation property to replacement property owned by Denny Moore contingent upon sign off of proper letter of approval by the United States Corps of Engineers, a title search by Pike County to be paid for by the replacement grantor who will prepare the deed for this property and a quit-claim deed for the mitigation property. (Ref. Court Ord. No. 12–16–02.006)

After receiving input from several agencies, the federal government, through the U.S. Army Corps of Engineers, approved the transfer by letter dated December 31, 2002, recommending "that the [Fiscal Court] assure itself that the replacement lands are unencumbered and that title to the replacement tract is secured by the [Fiscal Court] prior to the conveyance of the current mitigation tract (Tract No. 1839) to the acquiring party."

For reasons unclear from the record, the contemplated transfer of property did not occur, and the Fiscal Court took no further action concerning this matter until March 1, 2004. On that date, the Fiscal Court discussed whether KRS 67.0802 had been properly followed. The Fiscal Court unanimously approved the following:

THE PIKE COUNTY FISCAL COURT HEREBY APPROVES rescinding Court Order No. 12–16–02.006 which concerns sale of mitigation property. The Court did not properly follow the Kentucky statutory law for such sale and that particular court order is improper. (Ref. Court Ord. No. 03–01–01.009)

In August 2005, Southside, a corporation of which Moore is apparently the president, filed this action against the Fiscal Court seeking enforcement of the transaction which the Fiscal Court contemplated and approved in December 2002. Follow-

---

**2.** The Tug Fork Valley Flood Control Project was authorized by the Energy and Water Development Appropriation Act, 1981, Pub.L. 96–367, Title II, § 202, 94 Stat. 1331.

**3.** The preamble of the deed by which the federal government conveyed the property to the Fiscal Court recited the tracts necessity for the operation, management, and mainte-nance of the Project, "including construction of mitigation features and areas to mitigate loss and damage to wildlife habitat due to construction of the Project[]" and the Fiscal Court's corresponding obligation "to operate, manage and maintain [the] mitigation features and areas."

ing a bench trial, the trial court issued Findings of Fact, Conclusions of Law and Judgment in favor of the Fiscal Court. Essentially, the trial court concluded that the Fiscal Court's December 2002 order did not sufficiently comply with KRS 67.0802. Southside appeals.

## II. Standard of Review.

Our standard of review in this matter is two-fold. First, the trial court's "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR[4] 52.01. Second, any "interpretation of a statute is a matter of law." *Commonwealth v. Gaitherwright*, 70 S.W.3d 411, 413 (Ky.2002). Thus, the construction and application of statutes are interpreted "de novo without deference to the interpretations adopted by lower courts." *Wheeler & Clevenger Oil Co. v. Washburn*, 127 S.W.3d 609, 612 (Ky.2004). As noted, the facts in this matter are not disputed. Thus, our determination is largely a matter of construing KRS 67.0802.

## III. Issues on Appeal.

Southside makes two arguments on appeal. First, Southside asserts that the December 2002 order complied with KRS 67.0802. Second, it contends that whether the December 2002 order complied with the state statute is irrelevant, since the transfer of property is subject only to regulations or requirements imposed by the federal government.

### A. Compliance with KRS 67.0802.

 With respect to Southside's first argument, that the Fiscal Court complied with KRS 67.0802 and therefore was obligated to complete the contemplated ex-

change of property, the starting point must be a fiscal court's ability to sell real estate. The law is clear that a fiscal court has only those powers authorized by the legislature. *Bates v. Greenup County*, 282 Ky. 268, 271, 138 S.W.2d 463, 465 (1940). Furthermore, any person dealing with a fiscal court is assumed to know the law, as well as any limitations on the fiscal court's powers and authority. *See Boyd Fiscal Court v. Ashland Pub. Library Bd. of Trs.*, 634 S.W.2d 417, 418 (Ky.1982) (stating party had "ample notice of the fiscal court's limited capacity to contract"). Although KRS 67.080(1)(b) provides general authority for a fiscal court to "[s]ell and convey any real estate ... belonging to the county," a conveyance or sale of real estate must also be made "in accordance with KRS 67.0802[.]" KRS 67.080(1)(b)2.

KRS 67.0802 in turn sets out two major requirements for the sale of property:

(2) Before selling or otherwise disposing of any real or personal property, the county shall make a written determination setting forth and fully describing:

(a) The real or personal property;

(b) Its intended use at the time of acquisition;

(c) The reasons why it is in the public interest to dispose of it; and

(d) The method of disposition to be used.

(3) Real or personal property may be:

(a) Transferred, with or without compensation, to another governmental agency;

(b) Sold at public auction following publication of the auction in accordance with KRS 424.130(1)(b);

(c) Sold by electronic auction following publication of the auction, including the uniform resource link (URL)

4. Kentucky Rules of Civil Procedure.

for the site of the electronic auction, in accordance with KRS 424.130(1)(b); or

(d) Sold by sealed bids in accordance with the procedure for sealed bids under KRS 45A.365(3) and (4).

In this case, many of the trial court proceedings appear to have focused on whether the Fiscal Court's December 16, 2002, minutes sufficiently complied with KRS 67.0802(2). However, as argued by the Fiscal Court, the proposed transaction in no way made any pretense of satisfying the provisions of KRS 67.0802(3), which obviously require either a transfer to another governmental agency, or a public sale by auction or sealed bid. We recognize that the trial court decided this case under subsection (2), "an appellate court may affirm the decision of a trial court for any reason sustainable under the record." *Lynn v. Commonwealth*, 257 S.W.3d 596, 599 (Ky.App.2008) (citing *Brewick v. Brewick*, 121 S.W.3d 524, 527 (Ky.App.2003)). As the proposed transaction clearly did not comply with KRS 67.0802, the trial court did not err in so holding.

### B. Federal Law Preemption.

 Southside's second argument is, essentially, that any requirements imposed by KRS 67.0802 are preempted by federal law. Southside does not provide in its brief "a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." CR 76.12(4)(c)(v). The importance of this rule is to ensure that "the trial court should first be given the opportunity to rule on questions before they are available for appellate review." *Elwell v. Stone*, 799 S.W.2d 46, 48 (Ky. App.1990). An exception to this rule exists "to avert a manifest injustice." *Id.* Another occurs when the record sufficiently demonstrates that the issue presented

in the appellate court was contested before the trial court, *Baker v. Campbell County Bd. of Educ.*, 180 S.W.3d 479, 481–82 (Ky. App.2005). Here, the trial court record is neither lengthy nor ponderous, and we note that Southside made a passing reference to this issue in its opening statement at the bench trial before the court. Thus, we will address it briefly.

In *Gustafson v. City of Lake Angelus*, 76 F.3d 778, 782–83 (6th Cir.1996), the Sixth Circuit Court of Appeals provided a concise discussion of the parameters of preemption:

The doctrine of preemption springs from the Supremacy Clause of the Constitution: "[t]he Constitution and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land." U.S. Const., art. VI, cl. 2; *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). As interpreted by Chief Justice Marshall, "in every case, the act of Congress, or the treaty, is supreme; and the law of the state, though enacted in the exercise of powers not controverted, must yield to it." *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824). Preemption is predicated on congressional intent. The will of Congress to monopolize an area of legislation may be expressed in the authorizing statute and in the regulations enacted pursuant to that statute. *Hillsborough County, Florida v. Automated Medical Labs., Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985).

A statute may be construed as preemptive under three circumstances. *Id.* First, Congress, in enacting a federal statute, may express a clear intent to preempt state law. *Pacific Gas & Electric Co. v. State Energy Resources Con-*

*servation & Development Comm'n,* 461 U.S. 190, 203, 103 S.Ct. 1713, 1721–22, 75 L.Ed.2d 752 (1983). Second, absent express preemption, federal law may have an implied preemptive effect if Congress revealed this intent by "occupying the field" of regulation. *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984). There is implied preemption when there is a "scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it" or "because the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Fidelity Federal Savings & Loan Ass'n,* 458 U.S. at 153, 102 S.Ct. at 3022. There is a third type of preemption when state law actually conflicts with federal law. Such conflict occurs where "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

The focus of a preemption inquiry is on congressional intent.

■ We also note that "[p]re-emption of state law by federal statute or regulation is not favored 'in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has un-

mistakably so ordained.' " *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981) (quoting *Florida Lime & Avocado Growers,* 373 U.S. at 142, 83 S.Ct. at 1217).

■ In this instance, Southside appears to argue that, because the Fiscal Court accepted conveyance of the property under the 1983 Agreement (which prohibited any conveyance without the approval of the federal government), the only requirement for transfer of the property was approval of the federal government. Thus, any state laws which impose additional requirements on a transfer are preempted. However, in support of its argument, Southside points only to (1) the Energy and Water Development Appropriation Act, 1981, which was the original appropriation for the Project, (2) the Energy and Water Development Appropriation Act, 1992,[5] which provided the supplemental appropriation to finish the Project, 33 C.F.R. § 208.10 governing local flood protection works, and (3) the 1983 Agreement. In no way, shape or form do any of these items manifest Congressional intent to preempt state requirements on the transfer of real estate owned by counties. No express preemption exists, such as was evident in *Kinley Corp. v. Iowa Utils. Bd., Utils. Div., Dep't. of Commerce,* 999 F.2d 354, 358 (8th Cir.1993) (holding that the statutory language of the Hazardous Liquid Pipeline Safety Act of 1979, 49 U.S.C. § 2002(d), that " '[n]o State agency may adopt or continue in force any safety standards applicable to interstate pipeline facilities or the transportation of hazardous liquids associated with such facilities[,]' " constituted Congress' express "intent to preempt the states from regulating in the

---

**5.** Energy and Water Development Appropriations Act, 1992, Pub.L. 102–104, Title I, 105

Stat. 510.

area of safety in connection with interstate hazardous liquid pipelines"). Further, no " 'scheme of federal regulation [exists which is] ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it[.]' " *Fidelity Federal Sav. & Loan Ass'n,* 458 U.S. at 153, 102 S.Ct. at 3022 (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). *See, e.g., R.J. Corman R.R. Co./Memphis Line v. Palmore,* 999 F.2d 149, 152–53 (6th Cir.1993) (holding that more than a century of comprehensive federal regulation of railroads, including "rates, safety, labor relations and worker conditions[,] ... indicates Congress's general intent that railroads should be regulated primarily on a national level through an integrated network of federal law[,]" and that the federal act which established a uniform workday for railroad employees, but left the amount of pay to labor agreements, preempted Kentucky legislation which established overtime pay rate for employees, to the extent the state sought to apply that legislation to railroad employees). Finally, compliance with both federal and state requirements, concerning the transfer of real property subject to the 1983 Agreement, is not physically impossible. KRS 67.0802 does not conflict with the federal requirement of prior consent; rather it supplements that requirement.

■ Our reading of the 1983 Agreement and KRS 67.0802 indicates that each addresses a different governmental concern. The federal requirement seeks to ensure that the objectives of the Flood Control Project, *i.e.,* primarily to mitigate property damage in areas subject to flooding, and secondarily to preserve wildlife habitat, are not frustrated over time by state or local issues. The state statute, by contrast, is not directed toward objectives relating to flood control or wildlife habitat. Instead, its purpose is to ensure that local governments and their taxpayers receive adequate compensation when local governments decide to sell real property. As noted by the Supreme Court, the preemption "doctrine does not and could not in our federal system withdraw from the States ... the 'power to regulate where the activity regulated [is] a merely peripheral concern' [of] a federal law." *Chicago & N.W. Transp.,* 450 U.S. at 317, 101 S.Ct. at 1130 (quoting *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 243, 79 S.Ct. 773, 778, 3 L.Ed.2d 775 (1959)).

### IV. Conclusion.

While federal government consent must first be obtained prior to the Fiscal Court's conveyance of any parcel held under the August 1983 agreement, the other customary requirements for a valid transfer of real property must also be met. These requirements included compliance with KRS 67.0802. The trial court did not err in so holding.

The Pike Circuit Court's judgment is affirmed.

ALL CONCUR.