# In the Iowa Supreme Court

No. 24–1648

Submitted April 15, 2026—Filed June 5, 2026

**Enterprise Products Operating, LLC,**

Appellant,

vs.

**Iowa Utilities Commission,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, judge.

A pipeline company appeals a $1.8 million civil penalty as exceeding the statutory maximum in Iowa Code section 479B.21. **Decision of Court of Appeals Vacated; District Court Judgment Reversed and Case Remanded.**

Oxley, J., delivered the opinion of the court, in which all participating justices joined. Waterman, J., took no part in the consideration or decision of the case.

Robert V.P. Waterman, Jr. (argued) of Lane & Waterman LLP, Davenport; David J. Hellstern, Amanda A. James, and Andrew G. Carlson of Sullivan & Ward, P.C., West Des Moines; and Kent Rutter, Kaylen Strench, and John D. Fognani of Haynes and Boone, LLP, Houston, Texas, for appellant.

Michelle E. Rabe (argued) and Jon C. Tack of the Iowa Utilities Commission, for appellee.

**Oxley, Justice.**

This case deals with the scope of the damages cap in Iowa Code section 479B.21(1) (2023). Enterprise Products Operating, LLC (Enterprise) purchased a propane pipeline and two storage facilities, unaware that it was required to apply for state permits to operate those utilities in Iowa. *See id.* §§ 479B.3–.4. It is undisputed that Enterprise was in full compliance with all federally required safety permits. Nonetheless, Enterprise operated the pipeline and storage caverns without any state permits in violation of Iowa law for nearly twenty-one years. By statute, the maximum civil penalty for "any related series of violations" under chapter 479B cannot exceed $200,000. *Id.* § 479B.21(1).

After Enterprise's failure to obtain the state permits was discovered, the Iowa Utilities Commission[1] ordered Enterprise to pay a $1.8 million civil penalty, assessing the statutory maximum for each of the nine permits that Enterprise purportedly needed to obtain to do business in Iowa. Enterprise now argues that the IUC exceeded its statutory authority. As explained below, we agree: Enterprise's civil penalty is limited to $200,000 under section 479B.21(1).

**I. Factual Background and Proceedings.**

Enterprise supplies propane for homes and businesses across the country. In July 2002, Enterprise purchased a 98% ownership interest in Mid-America Pipeline Company, LLC (MAPCO) from Williams Natural Gas Liquids, Inc. Since then, Enterprise has owned and operated two underground storage caverns that sit in Johnson County and 750 miles of pipeline that transport propane from Texas into Iowa. When Enterprise bought its interest in MAPCO, the purchase

---

[1]The name of the agency was changed from "Iowa Utilities Board" to "Iowa Utilities Commission" as of July 1, 2024. *See* 2024 Iowa Acts ch. 1170, § 369(2). It was known as the "Iowa State Commerce Commission" when the agency originally issued permits for the utilities at issue in this case. *See* 1986 Iowa Acts ch. 1245, § 740. We refer to the agency as "IUC" or "Commission" consistently throughout this opinion, regardless of its then-current name.

sale agreement warranted that all permits were in place for the pipeline and storage facilities. That turned out not to be true, despite Enterprise's belief that it was for more than two decades.

MAPCO had acquired nine permits under Iowa law between 1961 and 1973 as it built segments of the pipeline and the storage facilities that Enterprise now owns. Seven permits were issued covering different segments of the pipeline and ranged from covering hundreds of miles to as little as three miles. The two storage facilities each had their own permit.

Years later, the statutory scheme under which those permits were issued—Iowa Code chapter 479—was found to be preempted by federal law. *Kinley Corp. v. Iowa Utils. Bd.*, 999 F.2d 354, 357–59 (8th Cir. 1993). "Chapter 479 establishe[d] a comprehensive state program supervising the intrastate and interstate transportation by pipeline of solid, liquid or gaseous substances, with the exception of water and interstate natural gas, in order to protect the safety and welfare of the public." *Id.* at 356 (footnote omitted). The United States Court of Appeals for the Eighth Circuit held that chapter 479 was invalid to the extent that it regulated "safety in connection with interstate hazardous liquid pipelines." *Id.* at 358.

The general assembly responded to federal preemption in 1995 by enacting a new scheme—chapter 479B—that does not regulate safety but still contains a permit requirement for hazardous liquid pipelines and underground storage facilities. *See* 1995 Iowa Acts ch. 192, § 31 (codified at Iowa Code § 479B.4 (Supp. 1995)); *see also Summit Carbon Sols., LLC v. Kasischke*, 14 N.W.3d 119, 130 n.2 (Iowa 2024) (discussing the general assembly's response to *Kinley Corp. v. Iowa Utilities Board*). That scheme remains in effect today. Although MAPCO

was required to obtain new state permits under the post-preemption chapter, *see* Iowa Code §§ 479B.3, .4(1), it never did.

In 2022, as the IUC was notifying permit holders about pending expirations and renewal requirements, it discovered that Enterprise needed but did not have any permits. Enterprise was unaware it was violating any provision in chapter 479B, explaining that "it is unusual for states to require additional permitting" beyond "the federal government's dominant role in regulating commercial pipelines." In February 2023, the IUC ordered Enterprise to show cause why it was operating in Iowa without a state permit. The IUC granted a two-week continuance for Enterprise to hire local counsel but declined Enterprise's subsequent request for additional time to gather information for a more robust response. The parties participated in a twenty-six-minute hearing in March, five-and-a-half weeks after the IUC's show cause order. Enterprise filed an application for the required state permits on the same day as the hearing.

A month later, the IUC levied a $1.8 million civil penalty against Enterprise. The IUC assessed a $200,000 penalty—the maximum allowed under section 479B.21(1)—based on Enterprise's lack of a permit for each of the nine long-defunct MAPCO permits. The Commission justified its stiff penalty by reasoning that "a permit is the cornerstone for all requirements under Iowa Code chapter 479B and 199 Iowa Administrative Code chapters 9 and 13."

Enterprise moved for rehearing on several grounds, which the IUC denied in its entirety in June. Enterprise primarily argued that the IUC's order exceeded its statutory authority by imposing a $1.8 million civil penalty because the penalty for "any related series of violations" is capped at $200,000. Iowa Code § 479B.21(1). The IUC disagreed, reasoning that "the lack of a permit for each hazardous liquid pipeline and hazardous liquid underground storage that was

formerly permitted constitutes its own related series of violations for which the [Commission] has discretion to levy civil penalties individually." The IUC also rejected Enterprise's fallback argument that the civil penalty violated its constitutional right to equal protection because the penalty was greater than what other companies received in similarly situated cases.

After the Commission denied rehearing, Enterprise petitioned for judicial review. It asserted that its permit violations were a related series of violations that should be capped at $200,000 because "Enterprise unintentionally failed to secure one permit for *one* pipeline." Enterprise's petition also included its argument that the penalty violated equal protection under article I, section 6 of the Iowa Constitution.

The district court affirmed the IUC's order assessing $1.8 million in civil penalties. Enterprise appealed, and the court of appeals also affirmed the IUC's order. The court of appeals first concluded that Enterprise did not preserve error on its challenge to the number of permits that it was required to have—even though the IUC did not contest error preservation. The court reasoned that Enterprise did not argue before the IUC that only one permit was required, but rather that the nine series of violations were related. The court of appeals also held that each of the nine defunct MAPCO permits represented a distinct "related series" of daily accruing violations under section 479B.21(1), so the IUC did not exceed the statutory damages cap with its $1.8 million penalty. Finally, the court of appeals rejected Enterprise's equal protection argument, applying rational basis review and concluding that Enterprise failed to show that similarly situated

companies received different treatment. Enterprise filed an application for further review, which we granted.[2]

## II. Analysis.

Enterprise challenges the IUC's civil penalty on statutory grounds for exceeding the maximum civil penalty permitted by section 479B.21(1), and it raises an equal protection argument under the Iowa Constitution. "Ordinarily, we look to statutory issues first in order to avoid unnecessary constitutional questions." *Site A Landowners v. S. Cent. Reg'l Airport Agency*, 977 N.W.2d 486, 493 (Iowa 2022) (quoting *Simmons v. State Pub. Def.*, 791 N.W.2d 69, 73–74 (Iowa 2010)). We need not address Enterprise's constitutional argument because, as explained below, we resolve the statutory issue in its favor. *See Mormann v. City of Manchester*, 27 N.W.3d 820, 831 (Iowa 2025) (deciding a dispositive matter of statutory interpretation to "adhere to the time-honored doctrine of constitutional avoidance" (quoting *Good v. Iowa Dep't of Hum. Servs.*, 924 N.W.2d 853, 863 (Iowa 2019))).

**A. Standard of Review.** The parties disagree over whether the IUC's order issuing Enterprise a civil penalty is entitled to deference. Enterprise argues that our review is for correction of errors at law because the issue involves "an

---

[2]Six days before oral argument, Enterprise filed a motion for reversal under Iowa Rule of Appellate Procedure 6.1006(3). It argues that the IUC abandoned the nine-permit premise that forms the basis for a $1.8 million civil penalty because, in February 2026, the IUC granted three permits for the entirety of Enterprise's propane pipeline and storage tanks—one permit for the eastern leg of the pipeline, one for the western leg, and one for its underground storage caverns. The IUC responded with a motion to strike, claiming that Enterprise's argument is an attempt to circumvent the court of appeals' error preservation decision about the number of permits that Enterprise needed. The IUC rejects Enterprise's position that the Commission "confessed error" in penalizing Enterprise based on MAPCO's nine invalid permits once Enterprise's utilities became fully permitted with just three permits. We directed the motions to be submitted with the appeal, but our resolution of the merits of the appeal renders both motions moot. *See Ronnfeldt v. Shelby Cnty. Chris A. Myrtue Mem'l Hosp.*, 984 N.W.2d 418, 428 (Iowa 2023) (recognizing the mootness doctrine applies when "the issues involved have become academic or nonexistent" (quoting *State ex rel. Turner v. Midwest Dev. Corp.*, 210 N.W.2d 525, 525 (Iowa 1973) (per curiam))).

erroneous interpretation of a provision of law whose interpretation has not clearly been vested" with the IUC. Iowa Code § 17A.19(10)(*c*). The IUC counters that this case involves "application of law to fact" such that we can only grant relief if the agency action was "irrational, illogical, or wholly unjustifiable." *Id.* § 17A.19(10)(*m*).

Like the court of appeals, we agree with Enterprise and review for correction of errors at law. The outcome of this case hinges on interpreting the scope of the damages cap in section 479B.21(1). *See Calcaterra v. Iowa Bd. of Med.*, 965 N.W.2d 899, 903 (Iowa 2021) ("We review an agency's interpretation of a statute for errors at law unless the legislature has clearly vested interpretive authority in the agency."). The general assembly did "not explicitly grant the [IUC] the authority to interpret" chapter 479B's maximum civil penalty. *Renda v. Iowa C.R. Comm'n*, 784 N.W.2d 8, 14 (Iowa 2010). Nor does the statute contain "a term of art within the agency's area of expertise such that the agency's interpretative authority can be fairly implied." *Cooke v. Iowa Dep't of Health & Hum. Servs.*, 31 N.W.3d 368, 372 (Iowa 2026). Accordingly, we give no deference to the IUC's interpretation of section 479B.21(1). We "will substitute our judgment for that of the commission if we conclude the [IUC] made an error of law." *Renda*, 784 N.W.2d at 14–15; *accord* Iowa Code § 17A.19(10)(*c*).

**B. Maximum Civil Penalty.** Iowa Code chapter 479B governs hazardous liquid pipelines and storage facilities. The general assembly's stated purpose for enacting the chapter is to give the IUC the ability "to protect landowners and tenants from environmental or economic damages which may result from the construction, operation, or maintenance of a hazardous liquid pipeline or underground storage facility." *Id.* § 479B.1. The Commission therefore has the authority "to approve the location and route of hazardous liquid pipelines, and

to grant rights of eminent domain where necessary." *Id.* Unlike its predecessor scheme in Iowa Code chapter 479, chapter 479B does not regulate the safety of interstate pipelines because such regulations are preempted by federal law. *See Kinley*, 999 F.2d at 358 ("Congress has expressly stated its intent to preempt the states from regulating in the area of safety in connection with interstate hazardous liquid pipelines.").

Still, pipeline companies must apply for a permit to operate hazardous liquid pipelines or store hazardous liquid underground in Iowa. Iowa Code § 479B.4. Violating that law, or any other requirement in chapter 479B, gives rise to a civil penalty that grows with each passing day of noncompliance until the fine reaches a prescribed maximum. *Id.* § 479B.21(1). Section 479B.21(1) provides the following:

> A person who violates this chapter or any rule or order issued pursuant to this chapter shall be subject to a civil penalty levied by the [commission] in an amount not to exceed one thousand dollars for each violation. Each day that the violation continues shall constitute a separate offense. However, the maximum civil penalty shall not exceed two hundred thousand dollars for any related series of violations.

*Id.* We must determine whether Enterprise's civil penalty for operating its pipeline and storage facilities without obtaining permits is capped at $200,000. We conclude that it is.

It is undisputed that Enterprise did not comply with the requirements of chapter 479B. Enterprise maintained and operated its pipeline and underground storage facilities without applying for a permit for 7,535 days—roughly twenty-one years between acquiring MAPCO and applying for a permit with the IUC. *See id.* §§ 479B.3, .4(1). Under section 479B.4, "[a]ny pipeline company now owning or operating a pipeline or underground storage facility in this state shall be issued a permit by the [commission] upon supplying the information as provided

for in section 479B.5, subsections 1 through 5, and meeting the requirements of section 479B.13." *Id.* § 479B.4(1). Each day that Enterprise "maintain[ed]" and "operate[d]," *id.* § 479B.3, its pipeline and storage facilities without meeting those requirements "constitute[d] a separate offense" that carried a daily fine of up to $1,000 until the penalty for that series of violations reached the $200,000 statutory limit, *id.* § 479B.21(1).

The IUC cannot impose a penalty against Enterprise based on MAPCO's nine permits that—as the parties agree—were invalidated after the Eighth Circuit's 1993 decision in *Kinley*. *See* 999 F.2d 357–59. When Enterprise purchased its interest in MAPCO years later in 2002, there were no valid state permits for the pipeline or storage facilities. In other words, what the IUC's order relied on to impose a penalty—i.e., "the previous [IUC]-approved permit P-Docket numbers" from when MAPCO obtained permits in the 1960s and 1970s—could not have been transferred to or renewed by Enterprise. Those permits were issued under a scheme that was preempted by federal law long before Enterprise owned or operated any pipeline or storage facilities in Iowa; they never could have been used by Enterprise. The IUC cannot penalize Enterprise based on those invalidated MAPCO permits, so the $1.8 million civil penalty cannot stand.

The parties' arguments center around the phrase "any related series of violations" in chapter 479B's damages cap. Iowa Code § 479B.21(1). The IUC contends that Enterprise incurred a daily fine for each permit that it needed but did not obtain; the daily fines were distinct violations; and the series of daily fines associated with each separate permit is a distinct "related series of violations" for which it can assess up to a $200,000 penalty. We disagree.

Instead, we agree with Enterprise that such an interpretation would render the word "related" superfluous. *See Iowa Individual Health Benefit Reins. v. State*

*Univ. of Iowa*, 999 N.W.2d 656, 663 (Iowa 2023) ("We presume statutes . . . do not contain superfluous words." (quoting *State v. Boone*, 989 N.W.2d 645, 650 (Iowa 2023))). A "series of violations" inherently contemplates a like relationship among the continuing daily offenses that are treated as distinct violations under Iowa Code section 479B.21(1). *See State v. Amsden*, 300 N.W.2d 882, 885 (Iowa 1981) (defining *series* as "a group of (usually) three or more things or events standing or succeeding in order and having a like relationship to each other" (quoting *Webster's Third New International Dictionary* 2073 (1976))). But the statutory maximum applies to a "related series," not just a "series." Iowa Code § 479B.21(1).

To give the word "related" meaning, we must identify Enterprise's violation: maintaining and operating a pipeline and storage facilities without a permit. *See id.* §§ 479B.3–.4. That violation stemmed from its acquisition of MAPCO under the mistaken belief that its pipeline and storage facilities already had all permits in place, as the purchase sale agreement warranted. Whether Enterprise needed one, three, or nine permits has no bearing on its maximum civil penalty in this case. Enterprise needed to apply for permits under section 479B.4(1) to maintain and operate its utilities in Iowa, but it did not do so. The number of permits that Enterprise needed does not matter because those series of violations were related when they arose from the same event—that is, Enterprise's acquisition of MAPCO's pipelines and storage facilities without subsequently applying for the required permits. The maximum civil penalty allowed by statute is therefore $200,000. *See id.* § 479B.21(1).

**III. Conclusion.**

For these reasons, we vacate the decision of the court of appeals, reverse the district court, and remand the case for further proceedings consistent with this opinion.

**Decision of Court of Appeals Vacated; District Court Judgment Reversed and Case Remanded.**

All justices concur except Waterman, J., who takes no part.