PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

WASHINGTON GAS LIGHT COMPANY,

*Plaintiff-Appellant,*

v.

THE PRINCE GEORGE'S COUNTY
COUNCIL SITTING AS THE DISTRICT
COUNCIL; PRINCE GEORGE'S COUNTY,
MARYLAND,

No. 12-1443

*Defendants-Appellees.*

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, Chief District Judge.
(8:08-cv-00967-DKC)

Argued: December 5, 2012

Decided: March 25, 2013

Before TRAXLER, Chief Judge, and FLOYD and
THACKER, Circuit Judges.

Affirmed by published opinion. Judge Thacker wrote the
opinion, in which Chief Judge Traxler and Judge Floyd
joined.

## COUNSEL

**ARGUED:** Linda M. Schuett, LINOWES & BLOCHER,
LLP, Annapolis, Maryland, for Appellant. David Eric Pom-

per, SPIEGEL & MCDIARMID, LLP, Washington, D.C., for Appellees. **ON BRIEF:** Midgett S. Parker, Jr., Benjamin S. Wechsler, LINOWES & BLOCHER, LLP, Annapolis, Maryland, for Appellant. Rajeshanand Kumar, Acting Principal Counsel to the District Council, PRINCE GEORGE'S COUNTY OFFICE OF LAW, Upper Marlboro, Maryland; Scott H. Strauss, Peter J. Hopkins, SPIEGEL & MCDIARMID, LLP, Washington, D.C., for Appellees.

---

## OPINION

THACKER, Circuit Judge:

Appellant Washington Gas Light Company ("Washington Gas") operates a natural gas substation on Chillum Road in Prince George's County, Maryland ("Chillum Site"). Beginning in 2004, Washington Gas sought to expand that substation with the addition of a liquefied natural gas ("LNG") storage tank. Washington Gas initially requested approval for this proposed expansion from Prince George's County ("County"), which denied the request based on recently enacted county zoning plans ("County Zoning Plans").

Thereafter, Washington Gas filed a federal action seeking: (1) a declaration that the County erroneously denied Washington Gas permission to proceed under 28 Md. Code Ann. § 7-112 (the "mandatory referral statute"); (2) a declaration that the Natural Gas Pipeline Safety Act ("PSA"), Natural Gas Act ("NGA"), and state law preempt the County Zoning Plans; and (3) an injunction prohibiting the County from enforcing the allegedly preempted County Zoning Plans.

The district court initially dismissed the mandatory referral claim for failure to state a claim upon which relief could be granted and, in the alternative, on *Burford* abstention grounds. In a subsequent order, the district court granted summary

judgment in favor of the County on the state and federal pre-emption claims, thus denying Washington Gas's request for declaratory and injunctive relief.

Washington Gas appeals the district court's order, dated February 9, 2009, dismissing the mandatory referral claim and the district court's subsequent order, dated March 9, 2012, granting summary judgment on the federal preemption claims.[1] We conclude (1) the district court did not abuse its discretion in dismissing the mandatory referral claim pursuant to *Burford*; (2) the PSA does not preempt the County Zoning Plans because the PSA only preempts safety regulations and the County Zoning Plans are not safety regulations; and (3) the NGA does not preempt the County Zoning Plans because Washington Gas is a local distributor of natural gas and, therefore, is not subject to the NGA.

Therefore, the district court's judgment, as set forth in its February 9, 2009 and March 9, 2012 orders, is affirmed.

I.

A.

Washington Gas distributes natural gas to retail customers in the Washington, D.C. area, including portions of Maryland and Virginia. Currently, Washington Gas operates a natural gas substation at the Chillum Site. The Chillum Site was initially approved for natural gas storage and compression in 1933. The scope of Washington Gas's operations at the Chillum Site has expanded, with County permission, on several occasions since that time. Specifically, in 1955, the County granted Washington Gas permission to construct a branch headquarters at the Chillum Site. Then, in 1975 and again in

---

[1]Washington Gas does not appeal the district court's grant of summary judgment on the state law preemption claims.

1982, the County permitted Washington Gas to construct additional office and storage space there.

### B.

Washington Gas began seeking approval to add LNG storage tanks to the Chillum Site in 2004. In pursuit of this proposed expansion, Washington Gas initially sought to invoke the mandatory referral statute, Md. Code Ann., Land Use §§ 20-301 — 20-307 (Lexis 2012).[2] This statute, sets forth a method through which certain public organizations may obtain approval for a project without having to go through local zoning review. *See Pan Am. Health Org. v. Montgomery County*, 657 A.2d 1163, 1168 (Md. 1995) ("*PAHO*"). However, the County determined that the mandatory referral statute was inapplicable in this case. Thus, Washington Gas ultimately sought to obtain zoning approval rather than to proceed through mandatory referral. Accordingly, the County held several hearings on this zoning request.

However, on March 23, 2006, during the pendency of the zoning proceedings, the County adopted the County Zoning Plans. The County Zoning Plans, known as the West Hyattsville District Overlay Zone ("WHDOZ") and the Transit District Development Plan ("TDDP"), were aimed at maximizing "transit-oriented development" in the area around the West Hyattsville Metro Center. The County Zoning Plans prohibited all industrial usage in that area, which included the Chillum Site. Based on this enactment, the County denied Washington Gas zoning approval on August 24, 2006.

Thereafter, Washington Gas appealed to the County Coun-

---

[2]At the time of the district court opinion, this provision was codified at 28 Md. Code Ann. § 7-112. However, effective October 1, 2012, the Maryland General Assembly repealed, revised, and reenacted the previous provision as Md. Code Ann., Land Use §§ 20-301 – 20-307 without substantive change.

cil, which denied the appeal. Washington Gas then appealed the denial to the Circuit Court for Prince George's County, Maryland, which dismissed the appeal on ripeness and exhaustion grounds.

C.

As the state and county proceedings were ongoing, Washington Gas also appeared before the Maryland Public Service Commission ("MDPSC") in two separate matters relevant to the proposed expansion. First, in November 2005, Washington Gas wrote a letter to the MDPSC requesting regulatory approval for the proposed expansion. In particular, Washington Gas requested the MDPSC to certify that the proposed expansion complied with Maryland's regulations governing thermal radiation and vapor exclusion zones.[3] By letter dated March 20, 2007, the MDPSC's engineering staff determined that Washington Gas's proposal was consistent with the pertinent safety regulations. Notably, the letter was expressly limited to safety considerations, indicating, "this opinion refers to analyses discussed herein and it does not state [the] Technical Staff's position on any other matter pertaining to the proposed Chillum facility . . . ." J.A. 744.[4]

Second, in November 2008, Washington Gas initiated MDPSC review of its annual Gas Portfolio Plan, a required annual presentation in which a public utility details how it intends to meet customer demand over the next five years. This review is conducted pursuant to the MDPSC's rate regu-

---

[3] The Code of Federal Regulations requires all LNG facilities to establish a thermal radiation exclusion zone and a vapor dispersion exclusion zone. *See* 49 C.F.R. §§ 193.2057, 193.2059 (2012). These zones are designed to create safe separation between an LNG facility and surrounding land uses. This regulation was promulgated pursuant to the PSA and adopted by the State of Maryland. *See* Md. Code Ann., Pub. Util. § 11-202(a) (Lexis 2010).

[4] Citations to the Joint Appendix ("J.A.") refer to the joint appendix filed by the parties in this case.

lation authority as set forth in Md. Code Ann., Pub. Util. § 4-402 (2012). As the district court noted, these annual reviews are limited to rate regulation and, therefore, "[t]hey are not general reviews of all aspects of public utilities in Maryland and do not include thorough reviews of a public utility's conformity with local land use plans." J.A. 1041. The proposed expansion was discussed during that review. However, because the proposed expansion, even if authorized by the County, would not have been completed within the next five years, the MDPSC did not express any opinion on the propriety of the proposal.

## D.

Following completion of the zoning proceedings and the ensuing state appeal, Washington Gas brought this federal action on April 16, 2008 in United States District Court for the District of Maryland. The initial complaint was amended on July 18, 2008 (the "first amended complaint"). The first amended complaint sought (1) a declaration that Maryland's mandatory referral procedure applies to the LNG project (the "mandatory referral count"); (2) a declaration that the PSA, the NGA, and Maryland state law preempt the County Zoning Plans; and (3) an injunction preventing the County from enforcing the County Zoning Plans.

The County filed a motion to dismiss the first amended complaint for failure to state a claim upon which relief could be granted and, in the alternative, to abstain from asserting jurisdiction over the case. Washington Gas filed a motion for summary judgment. Prior to holding a hearing on these motions, the district court issued a memorandum opinion on January 30, 2009, outlining the various issues before the court and expressing tentative opinions as to how it would resolve those issues.

First, as to the County's motion to dismiss, the district court indicated it would likely deny that motion, except with

respect to the mandatory referral count. On that count, the district court indicated it would likely grant the County's motion to dismiss for failure to state a claim on which relief could be granted because "there is no state law cause of action delineated, and certainly no federal question involved." J.A. 281.

As to the County's motion to abstain, the district court indicated it would likely deny that motion, again with the exception of the mandatory referral count. On that count, the district court indicated that it would abstain from deciding the issue because "[f]ederal adjudication [of the mandatory referral count] would disrupt state efforts to establish a coherent policy regarding zoning procedures and the state mechanisms for land use planning." J.A. 288.

Finally, as to Washington Gas's summary judgment motion, the district court indicated it would likely deny that motion in full, as there still remained issues of fact relevant to state and federal preemption.

The district court then conducted a hearing on these motions on February 10, 2009. Later that day, the court entered an order granting the County's motion to dismiss and the County's motion to abstain as to the mandatory referral count; denying the County's motions to dismiss and to abstain as to the other counts in the first amended complaint; and denying the entirety of Washington Gas's motion for summary judgment. In so doing, the district court expressly adopted its reasoning articulated in its prior memorandum opinion. The district court then granted Washington Gas leave to file another complaint (the "second amended complaint").

The second amended complaint, filed on February 24, 2009, contained all of the original claims, excluding the mandatory referral count, and added a few factual allegations. Notably, the second amended complaint alleged, for the first time, that Washington Gas is an interstate pipeline under the

PSA and that it was subject to regulation by the Federal Energy Regulatory Commission ("FERC") under the NGA.

Washington Gas then filed a second motion for summary judgment, which the district court denied. Specifically, the district court rejected Washington Gas's characterization of its operations as purely interstate, concluding that Washington Gas was, instead, an intrastate facility under the PSA and a local distributor of natural gas under the NGA. Accordingly, the district court held that Washington Gas is "subject to the exclusive jurisdiction in the state in which its gas is consumed, in this case Maryland." J.A. 529.

On March 28, 2011, Washington Gas filed its third—and final—amended complaint (the "third amended complaint"). In the third amended complaint, Washington Gas averred that, even assuming it is not an interstate pipeline, the County Zoning Plans are still preempted by the NGA, the PSA, and state law.[5]

Thereafter, the County filed a counter-claim seeking a declaration that neither federal nor state law preempted the County Zoning Plans. The parties then filed cross motions for summary judgment. By a memorandum opinion dated March 9, 2012, the district court granted the entirety of the County's motion and denied the entirety of Washington Gas's motion. The district court rejected Washington Gas's argument that the PSA comprehensively regulates LNG facility siting, concluding instead that the PSA's preemptive effect only extends to safety standards. Because the district court also found that the County Zoning Plans were not, in fact, safety standards,

---

[5]In as much as the third amended complaint re-asserted the claim that Washington Gas is an interstate pipeline, that factual allegation is preserved for purposes of this appeal. As the district court noted, "[i]nsofar as this count was premised on the theory that Washington Gas is an interstate facility, Washington Gas was only permitted to reassert its allegations to preserve them for appeal." J.A. 1015.

the court concluded the County Zoning Plans are not pre-empted by the PSA. Additionally, the district court concluded, because Washington Gas is a local distributor of natural gas exempt from regulation under the NGA, the NGA does not preempt the County Zoning Plans. Washington Gas timely appealed.

Washington Gas appeals the district court's February 9, 2009 order arguing that the district court erred in abstaining from deciding the mandatory referral count under *Burford*. Washington Gas also appeals the district court's March 9, 2012 order arguing (1) the PSA impliedly preempts the County Zoning Plans because they are, in fact, safety regula-tions; and (2) the NGA impliedly preempts the County Zon-ing Plans by granting exclusive authority to the MDPSC.

## II.

We review the district court's decision to abstain under *Burford* for abuse of discretion. *See MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 280 (4th Cir. 2008).

We review de novo the district court's award of summary judgment to the County on Washington Gas's federal preemp-tion claims. *See Nat'l City Bank of Indiana v. Turnbaugh*, 463 F.3d 325, 329 (4th Cir. 2006). Summary judgment is appro-priate where "the evidence shows that no genuine issue of material fact exists and the moving party is entitled to judg-ment as a matter of law." *Id.*; *see also* Fed. R. Civ. P. 56(a). Because the facts here are undisputed, this case presents only questions of law.

III.

A.

Mandatory Referral

The district court abstained from resolving Washington Gas's mandatory referral count under the abstention doctrine articulated in *Burford v. Sun Oil*, 319 U.S. 315 (2007).[6] Under this doctrine, "courts may abstain when the availability of an alternative, federal forum threaten[s] to frustrate the purpose of a state's complex administrative system." *Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007). Specifically, *Burford* abstention is permissible when:

> [F]ederal adjudication would "unduly intrude" upon "complex state administrative processes" because either: (1) "there are difficult questions of state law whose importance transcends the result in the case then at bar"; or (2) federal review would disrupt "state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*Id.* (quoting *New Orleans Pub. Serv. Inc. v. Council of New Orleans*, 491 F.3d 350, 361-63 (4th Cir. 1989) ("*NOPSI*")).

Ordinarily, federal courts have an "'unflagging obligation to exercise their jurisdiction.'" *MLC Auto.*, 532 F.3d at 280 (quoting *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988)). Thus, abstention "remains the exception, not the rule." *Id.* (quoting *NOPSI*, 491 F.3d at 359). However, abstention's "importance in our system of dual sovereignty cannot be

---

[6]The County argues that the district court also dismissed the mandatory referral count for failure to state a claim upon which relief can be granted and that the district court's judgment can be upheld on this basis alone. However, because we agree with the district court's decision to abstain from resolving the mandatory referral count, we need not determine whether this count does, in fact, state a colorable claim for relief.

underestimated." *Id.* (internal quotation marks omitted). Thus, federal courts must "exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." *Burford*, 319 U.S. at 318 (internal quotation marks omitted).

In concluding that *Burford* abstention was warranted here, the district court indicated:

> Federal adjudication [of the mandatory referral count] would disrupt state efforts to establish a coherent policy regarding zoning procedures and the state mechanisms for land use planning. Plaintiff has not alleged that the mandatory referral provision interferes with any federal rights. Rather, Plaintiff asks this court to declare that, under Maryland law, public utilities are subject only to mandatory referral. Such a declaration would have far reaching effects that transcend the importance of this section.

J.A. 288-89.

As noted, Maryland's mandatory referral statute exempts certain public utility projects from local zoning review. In particular, this statute enumerates the public entities to which it applies, including "a publicly owned or privately owned public utility." *See* Md. Code Ann., Land Use § 20-301 (Lexis 2012). Washington Gas argues that, as a privately owned public utility, mandatory referral plainly applies to its proposed expansion. Washington Gas further argues that the district court abused its discretion in abstaining under *Burford* because the issue involves, "a straightforward question of statutory construction" and, therefore, "an adjudication of the issue does not disrupt a coherent state policy with respect to a matter of substantial public concern." Br. of Appellants 35.

The County counters that Washington Gas's reading of the statute is overly simplistic and that it ignores other language

in the mandatory referral statute which restricts the siting authority of privately-owned public utilities. Specifically, the County argues that the reference to privately-owned public utilities in the first section of the statute refers only to the fact that "certain public officials have siting authority to authorize certain privately-owned utility structures," and that ultimate authority to approve a proposal under the mandatory referral statute "is conferred on public entities not a privately owned utility." Br. of Appellees 54-55.

Moreover, the County points out that, in *PAHO*, we certified a similar question to the Maryland Court of Appeals. Specifically, in *PAHO*, an international organization sought to construct its headquarters in Montgomery County, Maryland, notwithstanding local zoning restrictions that would have prohibited that use. Before this court, the organization argued that it was exempt from local zoning under the mandatory referral statute. Rather than construe the mandatory referral statute, this Court certified the question to the Maryland Court of Appeals. Thus, in the present case, the County argues that our decision to certify a question to the Maryland Court of Appeals in *PAHO* demonstrates that the construction of Maryland's mandatory referral statute is a difficult and important issue of state law and, accordingly, that issue should be decided by the state.

Notably, "cases involving questions of state and local land use and zoning law are a classic example of situations where *Burford* should apply." *MLC Auto.*, 532 F.3d at 282 (internal quotation marks omitted). While zoning and land use cases do not automatically warrant *Burford* abstention, in cases where "plaintiffs' federal claims stem solely from construction of state or local land use or zoning law, not involving the constitutional validity of the same and absent exceptional circumstances . . . , the district courts should abstain under the *Burford* doctrine to avoid interference with the State's or locality's land use policy." *Id.*

In this case, resolution of Washington Gas's mandatory referral count turns on whether Maryland's mandatory referral statute should have been applied. That question turns entirely on the meaning of the phrase "privately owned public utility" as it is used in Maryland's mandatory referral statute. Thus, Washington Gas's mandatory referral claim turns entirely on the construction of state or local land use law. In these circumstances, precedent dictates that *Burford* abstention is appropriate.

### B.

### Federal Preemption

Under the Supremacy Clause of the United States Constitution, federal law is "the supreme Law of the Land." U.S. Const. art. VI, cl. 2. Accordingly, "state law that conflicts with federal law is 'without effect.'" *See AES Sparrows Point LNG, LLC v. Smith*, 527 F.3d 120, 125 (4th Cir. 2008) (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992)). In determining whether a state law is preempted, "we are guided first and foremost by the maxim that 'the purpose of Congress is the ultimate touchstone in every pre-emption case.'" *Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 322 (4th Cir. 2012) (quoting *Wyeth v. Levine*, 555 U.S. 555, 564 (2009)).

Preemption generally occurs in one of three circumstances. First, a federal law preempts state law when Congress expressly declares its intention that state law be preempted. *See Epps*, 675 F.3d at 322; *see also Cipollone*, 505 U.S. at 517. Second, a federal law impliedly preempts state law when Congress has occupied the field by "regulating so pervasively that there is no room left for the states to supplement federal law." *Epps*, 675 F.3d at 322 (internal quotation marks omitted); *see also Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300 (1988). Third, federal law preempts state law when the federal and state laws actually conflict. *See Epps*, 675

F.3d at 322. Ordinarily, "Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." *Cipollone*, 505 U.S. at 517.

With these general preemption principles in mind, we turn first to the question of whether the PSA preempts the County Zoning Plans.

## 1.

## PSA Preemption

### a.

### Statutory Framework

The PSA's stated purpose is to "provide adequate protection against risks to life and property posed by pipeline transportation and pipeline facilities" by empowering the Secretary of Transportation to "prescribe minimum safety standards for pipeline transportation and for pipeline facilities." 49 U.S.C. § 60102(a)(1)-(2) (2006). Accordingly, the PSA generally authorizes the Secretary of Transportation to prescribe and enforce minimum safety standards for locating new LNG facilities and for the design, installation, construction, inspection, and testing of those facilities. *See* 49 U.S.C. § 60103(a)-(b) (2006).

However, under the PSA, the Secretary of Transportation may not "prescribe or enforce safety standards for an intrastate pipeline facility or intrastate pipeline transportation to the extent that the safety standards and practices are regulated by a State authority . . . that submits to the Secretary annually a certification for the facilities and transportation . . . ." 49 U.S.C. § 60105(a) (2006). In Maryland, the MDPSC is the authorized state authority that submits the required annual

certifications to the Secretary of Transportation. *See* MD Code Ann., Public Util. § 11-202(a) (Lexis 2010).

The PSA contains an express preemption provision, which states, in relevant part:

> Preemption.—A State authority that has submitted a current certification under section 60105(a) of this title may adopt additional or more stringent safety standards for intrastate pipeline facilities and intrastate pipeline transportation only if those standards are compatible with the minimum standards prescribed under this chapter. A State authority may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation . . . .

49 U.S.C. § 60104(c) (2006). Accordingly, we have held that the PSA expressly preempts state and local law in the field of safety. *See, e.g.*, *Tenneco Inc. v. Pub. Serv. Comm'n of W. Va.*, 489 F.2d 334, 336 (4th Cir. 1973) ("The [PSA's] text, its legislative history, administration implementation, and judicial interpretation, attest to federal preemption of the field of safety with respect to the establishment and enforcement of standards regulating the interstate transmission of gas by pipeline.")

b.

Analysis

Washington Gas argues that the PSA preempts the County Zoning Plans expressly, impliedly, and by conflict. We disagree on all counts. As noted, the PSA expressly preempts the field of pipeline safety. *See* 49 U.S.C. § 60104(c). Here, however, because the County Zoning Plans are not safety regulations, they do not come within the express preemption provision of the PSA. As the district court properly held, the

County Zoning Plans are land use regulations designed to foster transit-oriented development around the West Hyattsville Metro Station. This interpretation finds support in the final version of the TDDP, which indicates that its main purpose is to "maximize the public benefits from the West Hyattsville Metro Station." S.J.A. 25.[7] To further this purpose, the TDDP articulates the following specific goals:

- Promote [transit-oriented development] near the Metro Station and create a sense of place consistent with the neighborhood character areas.

- Ensure that all new development or redevelopment in the transit district is pedestrian-oriented.

- Restore, protect, and enhance the environment by protecting environmentally sensitive areas, minimizing the impacts of development, and expanding recreational opportunities and trail and bikeway connections.

- Maximize residential development opportunities within walking distance of the Metro station.

*Id.* In light of these goals, it is clear that the County Zoning Plans are primarily local land use regulations as opposed to safety regulations.

In *Texas Midstream Gas Servs. v. City of Grand Prairie*, 608 F.3d 200 (5th Cir. 2010), the Fifth Circuit reached a similar conclusion on analogous facts. There, a gas company sought to construct an interstate natural gas pipeline facility in Grand Prairie, Texas. Under Grand Prairie's zoning regulations, the facility would have needed to comply with a 300 foot "setback" requirement under which all facilities needed

---

[7]Citations to the Supplemental Joint Appendix ("S.J.A.") refer to the supplemental joint appendix filed by the parties in this appeal.

to be set back at least 300 feet from a nearby road. The gas company sought a declaration that the setback requirement was preempted by the PSA arguing, as Washington Gas does here, that the PSA broadly preempts the siting of natural gas facilities. The Fifth Circuit disagreed, holding that the PSA's preemptive effect is limited to the field of pipeline safety and that the setback requirement was not a safety standard but, rather, was primarily aimed at developing "neighborhood" aesthetics in the area. *See Texas Midstream*, 608 F.3d at 211 ("[T]he setback requirement primarily ensures that bulky, unsightly, noisy compressor stations do not mar neighborhood aesthetics.")

Washington Gas attempts to distinguish *Texas Midstream* by arguing that, in that case, the local regulation did not completely prohibit the company from siting the proposed facility in its preferred location, whereas, in this case, the County Zoning Plans would completely prohibit Washington Gas from using its preferred location. This is a distinction without a difference. Logically, the power to impose a zoning requirement includes the power to preclude any proposed usage of the zoned area that cannot comply with such requirement. Thus, the fact that the County Zoning Plans arguably have a more significant effect on Washington Gas than the setback requirement did on the regulated utility in *Texas Midstream* is of no moment here.

Washington Gas also argues that the County Zoning Plans are "safety regulations in disguise" and, therefore, are preempted by the PSA. Rep. Br. of Appellants 13. The district court properly rejected this argument. At their core, the County Zoning Plans are local land use provisions designed to foster residential and recreational development. Even assuming safety concerns played some part in the enactment of the County Zoning Plans, those concerns would have been merely incidental to the overall purpose of the County Zoning Plans. This is insufficient to justify a finding that the County Zoning Plans were, in fact, safety regulations. *See, e.g.*, *Texas*

*Midstream*, 608 F.3d at 211 ("However, this incidental salutary effect on fire safety does not undermine Congress's intent in promulgating the PSA, as it is neither direct nor substantial.")

Washington Gas next argues that, through the PSA, Congress "comprehensively" addresses the siting of LNG facilities and, therefore, the PSA and the regulations adopted thereunder impliedly preempt the County Zoning plans. Br. of Appellants 24. We reject this argument. Because the County Zoning Plans are beyond the scope of the PSA's express preemption provision, it is unlikely that they are impliedly preempted. *See,* e.g., *Coll. Loan Corp. v. SLM Corp.*, 396 F.3d 588, 596 n.5 (4th Cir. 2005) ("Because Congress deemed it necessary to specifically preempt certain state laws, it is clear that Congress could not have intended the [Higher Education Act] to so 'occupy the field' that it would automatically preempt all state laws." (quoting *Cipollone*, 505 U.S. at 517)).

Even if we were to find that the PSA has preemptive effect beyond the express preemption provision discussed in 49 U.S.C. § 60104(c), we would not conclude that Congress intended the PSA to occupy the field of natural gas facility siting. Specifically, the PSA expressly circumscribes the Secretary of Transportation's role in this area, indicating, "[t]his chapter does not authorize the Secretary of Transportation to prescribe the location or routing of a pipeline facility." 49 U.S.C. § 60104(e) (2006).

Finally, we reject Washington Gas's argument that the PSA preempts the County Zoning Plans by conflict. Conflict preemption exists where a state statute "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Chi. & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317 (1981). Here, the County Zoning Plans do not stand as an obstacle to the accomplishment of the full purposes of Congress, because, as noted above, Congress' purpose in enacting the PSA was to create

federal minimum safety standards on all natural gas pipeline facilities. *See* 49 U.S.C. § 60102(a). Because the County Zoning Plans are not safety standards, they do not stand as an obstacle to the accomplishment of this purpose.

Moreover, Washington Gas has repeatedly indicated that there are alternative locations, albeit more costly, that it could use for the proposed expansion. While Washington Gas objects to the use of these alternatives based on the cost, this objection is of no constitutional significance. *See Texas Midstream*, 608 F.3d at 211 ("[Texas Midstream] raises the prospect that an operator of a compressor station may have to acquire more land to comply with both requirements. This may cost [Texas Midstream] money, but it does not thwart the full purposes and objectives of Congress." (internal citations and quotation marks omitted)). Thus, Washington Gas could comply with both statutes simultaneously if it so chooses. Therefore, there is no conflict between the PSA and the County Zoning Plans.

2.

NGA Preemption

a.

Statutory Framework

The NGA was designed to ensure that natural gas consumers have access to an adequate supply of natural gas at "just and reasonable rates." *See Pub. Serv. Comm'n of State of N.Y. v. Fed. Power Comm'n*, 543 F.2d 757, 792 (D.C. Cir. 1974). Accordingly, the NGA grants FERC plenary power over (1) the transportation of natural gas in interstate commerce; (2) the sale of natural gas in interstate commerce; and (3) the companies who transport and sell natural gas in interstate commerce. *See* 15 U.S.C. § 717(b) (2006). Similarly, the NGA gives FERC jurisdiction over the siting of natural gas

facilities, as a natural gas company must obtain a certificate of public convenience and necessity from FERC before constructing an interstate natural gas facility. *See* 15 U.S.C. § 717f(c)(1)(A) (2006).

However, the NGA only regulates the interstate natural gas industry. Specifically, 15 U.S.C. § 717(b) further indicates, "[FERC's authority] shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas." Thus, as the Supreme Court has held, the NGA "expressly carves out a regulatory role for states . . . providing that the States retain jurisdiction over intrastate transportation, local distribution, and distribution facilities, and over 'the production or gathering of natural gas.'" *Northwest Cent. Pipeline Corp. v. State Corp. Comm'n of Kansas*, 489 U.S. 493, 507 (1989) (quoting 15 U.S.C. § 717(b)).

Notably, not all natural gas companies whose operations cross state lines are considered "interstate" for purposes of the NGA. Specifically, 15 U.S.C. §§ 717f(f)(1)-(2) (2006) provides:

> (f) Determination of service area; jurisdiction of transportation to ultimate consumers
>
> (1) The Commission, after a hearing had upon its own motion or upon application, may determine the service area to which each authorization under this section is to be limited. Within such service area as determined by the Commission a natural gas company may enlarge or extend its facilities for the purpose of supplying increased market demands in such service area without further authorization; and
>
> (2) If the Commission has determined a service area pursuant to this subsection, transportation to the ulti-

mate consumers in such service area by the holder of such service area determination, even if across State lines, shall be subject to the exclusive jurisdiction of the State commission in the State in which the gas is consumed. This section shall not apply to the transportation of natural gas to another natural gas company.

15 U.S.C. § 717f(f)(1)-(2). Accordingly, natural gas companies operating pursuant to a service area designation under this section are permitted to "enlarge or expand facilities to supply market requirements without further Commission approval." *Washington Gas Light Co.*, 74 FERC ¶ 61,048, at p. 61,106 (Jan. 22, 1996).

b.

Analysis

On appeal, Washington Gas argues that the NGA transfers jurisdiction over the enlargement or expansion of Washington Gas's facilities to the MDPSC and that this delegation of authority preempts the County Zoning Plans.[8] We disagree.

For decades, Washington Gas has operated pursuant to a service area designation under § 717f(f) of the NGA. *See Washington Gas Light Co.*, 28 F.P.C. 753 (1962) (granting Washington Gas's initial request for a service area determination); *Washington Gas Light Co.*, 74 FERC ¶ 61048 (Jan. 22, 1996) (expanding the scope of Washington Gas' service area determination). Thus, as the district court observed, "FERC's issuance of a blanket certificate resulted in the designation of a service area that, although crossing state lines, treats Wash-

---

[8]Washington Gas does not identify the preemption doctrine on which it relies in making this argument. However, this omission is of no moment here, as both Congress and FERC have expressly indicated that the NGA does not apply to local distribution pipelines like Washington Gas.

ington Gas as a local distribution company." J.A. 519. Accordingly, Washington Gas is permitted to expand its facilities without further authorization from FERC. *See Washington Gas Light Co.*, 74 FERC ¶ 61048 (Jan. 22, 1996).

Congress confirmed this reading in the legislative history to a recent amendment to § 717f(f).[9] Specifically, the Senate Report indicates

> The Natural Gas Act requires the Federal Energy Regulatory Commission ("FERC") to regulate natural gas companies that provide service in interstate commerce. Companies that sell gas and provide appurtenant service to retail customers are local distribution companies, and generally are regulated by individual state public utility commissions.
>
> In a handful of instances, there are local distribution companies that have customers in service areas that straddle state lines. *Because they provide service in more than one state, they ordinarily would be regulated by FERC. However, section 7(f) of the Natural Gas Act allows FERC to make a determination that such a company is performing a local distribution function. If it makes such a determination, the natural gas company may "enlarge or extend its facilities" in that service area for the purpose of supplying increased market demands in the service area without further authorization from FERC. Washington Gas Light Company, which serves the D.C. metropolitan area, is an example of a 7(f) company.*

S. Rep. No. 100-486, at 2 (1988) (emphasis supplied), *reprinted in* 1988 U.S.C.C.A.N. 2692, 2692-93.

---

[9]In particular, this amendment, passed in 1988, added the language that is now codified § 717f(f)(2).

Based on this designation, the parties agree that FERC lacks jurisdiction over the proposed expansion at the Chillum Site. However, Washington Gas argues that § 717f(f) transfers jurisdiction over the enlargement or extension of its facilities to the MDPSC and that this transfer of jurisdiction preempts the County Zoning Plans. However, the plain language of § 717f(f) does not support this assertion.

Specifically, § 717f(f)(1) governs the expansion of natural gas facilities and provides that, if FERC has designated a service area, a natural gas company operating pursuant to that designation may expand its facilities without further FERC authorization. Notably, however, this section does not address which, if any, other regulatory bodies actually exercise such authority. Rather, § 717f(f)(1) operates negatively as exemption from FERC regulation, not as a positive grant of authority to the MDPSC.[10] Thus, Washington Gas's argument that § 717f(f) transfers jurisdiction over expansion of its facilities to the MDPSC finds no support in § 717f(f)(1).

Similarly, Washington Gas's interpretation is unaided by § 717f(f)(2). Section 717f(f)(2) expressly applies to the transportation of natural gas and provides that regulation of transportation services by a § 717f(f) designee is "subject to the exclusive jurisdiction of the State commission in the State in which the gas is consumed." 15 U.S.C. § 717f(f)(2). Thus, while § 717f(f)(2) grants the MDPSC exclusive jurisdiction to regulate a part of Washington Gas's operations, it does so only insofar as transportation is concerned. However, this is a case about facility expansion, not transportation. Thus, § 717f(f)(2)'s grant of exclusive jurisdiction to the MDPSC to

---

[10]Though Washington Gas takes a different position on appeal, Washington Gas previously acknowledged that this was the correct interpretation of § 717f(f)(1) in a hearing before the district court. *See* J.A. 1096 ("[Appellant's Counsel]: [§ 717f(f)(1)] does not say anything more than '[y]ou do not need to have FERC approval.' It does not expressly state that you must go to the, here the Maryland PSC, for any kind of regulatory oversight at all.").

regulate Washington Gas's transportation activities is not relevant to the question of whether the NGA preempts the County Zoning Plans.

In arguing that the NGA vests the MDPSC with exclusive jurisdiction over the expansion of Washington Gas' facilities, Washington Gas appears to conflate the two provisions of § 717f(f). However, this is not appropriate. As the district court held, these two provisions, separated by an "and," regulate entirely different areas of the natural gas industry: transportation and siting. Thus, the fact that § 717f(f)(2) vests exclusive jurisdiction over transportation in state public service commissions does not imply that Congress intended to do the same thing for siting in § 717f(f)(1).[11]

Moreover, the only authority Washington Gas cites in support of its interpretation is *Appalachian Power Co. v. Public Serv. Co. of W. Va.*, 812 F.2d 898 (4th Cir. 1987). In *Appalachian Power*, we held that the Federal Power Act preempted the West Virginia Public Service Commission's attempt to regulate an agreement among several utility companies engaged in the transmission of energy in interstate commerce. However, because *Appalachian Power* did not involve FERC regulation under the NGA and because the regulated entities in *Appalachian Power* were engaged in interstate commerce, Washington Gas's reliance on *Appalachian Power* in the present matter is misplaced.

Finally, Washington Gas asserts that this court should follow the United States District Court for the District of Rhode

---

[11]In fact, the absence of such language in § 717f(f)(1) is a strong indication that Congress did not intend for state public service commissions to have such authority. *See Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 452 (2002) ("[W]hen 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'") (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

Island's approach in *Algonquin LNG v. Loqa*, 79 F. Supp. 2d 49 (D.R.I. 2000), and conclude that the NGA does, in fact, preempt the County Zoning Plans. Washington Gas's reliance on *Algonquin* is misplaced. In that case, the operator of an interstate natural gas pipeline facility sought a declaration that a Providence, Rhode Island ordinance requiring the operator to obtain local zoning approval for a proposed modification was preempted by the NGA and the PSA. The district court agreed, holding, "[t]hese statutes, together with the regulations promulgated pursuant to them, establish a comprehensive scheme of federal regulation that the Supreme Court has said confers upon FERC exclusive jurisdiction over the transportation and sale of natural gas in interstate commerce." *Algonquin*, 79 F. Supp. 2d at 51. Accordingly, the *Algonquin* court held that the city zoning ordinance was preempted.

*Algonquin* is distinguishable, however, because the facility at issue there was an *interstate* facility and, therefore, both the NGA and the PSA applied. Because Washington Gas is a local distribution pipeline under the NGA, the "comprehensive scheme" of federal regulation on which the *Algonquin* court relied is inapplicable. Given that *Algonquin*'s preemption holding rested entirely on the existence of this "comprehensive scheme" of regulation, that case has no persuasive value here.

### IV.

In summary, we conclude that (1) the district court properly abstained from deciding the mandatory referral count based on *Burford* abstention; (2) the PSA does not preempt the County Zoning Plans because the PSA only preempts safety regulations and the County Zoning Plans are not safety regulations; and (3) the NGA does not preempt the County Zoning Plans because the NGA only preempts state and local laws governing interstate natural gas operations and, per the NGA, Washington Gas is a local distribution company. Therefore, the judgment of the district court is

*AFFIRMED*.