# United States Court of Appeals

## For the Eighth Circuit

_____

No. 23-3758

_____

William Couser; Summit Carbon Solutions, LLC

*Plaintiffs - Appellees*

v.

Shelby County, Iowa; Shelby County Board of Supervisors; Steve Kenkel, in his official capacity as a Shelby County Supervisor; Charles Parkhurst, in his official capacity as a Shelby County Supervisor; Darin Haake, in his official capacity as a Shelby County Supervisor

*Defendants - Appellants*

------------------------------

Iowa Farmers Union; Seven Iowa Landowners; Iowa Farm Bureau Federation; Pipeline Safety Trust

*Amici on Behalf of Appellant(s)*

American Petroleum Institute; Liquid Energy Pipeline Association

*Amici on Behalf of Appellee(s)*

_____

No. 23-3760

_____

William Couser; Summit Carbon Solutions, LLC

*Plaintiffs - Appellees*

v.

Story County, Iowa; Story County, Board of Supervisors; Latidah Faisal, in her official capacity as Story County Supervisor; Linda Murken, in her official capacity as Story County Supervisor; Lisa Heddens, in her official capacity as Story County Supervisor

*Defendants - Appellants*

------------------------------

Iowa Farmers Union; Seven Iowa Landowners; Iowa Farm Bureau Federation; Pipeline Safety Trust

*Amici on Behalf of Appellant(s)*

American Petroleum Institute; Liquid Energy Pipeline Association

*Amici on Behalf of Appellee(s)*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: November 20, 2024
Filed: June 5, 2025
_____

Before COLLOTON, Chief Judge, BENTON and KELLY, Circuit Judges.
_____

BENTON, Circuit Judge.

Summit Carbon Solutions, LLC wants to build an interstate pipeline through Iowa. Two counties—Shelby and Story—passed ordinances regulating pipelines. Summit challenges the ordinances as preempted by the federal Pipeline Safety Act

(PSA) and Iowa law.  The district court granted summary judgment, permanently enjoining the ordinances.  Having jurisdiction under §1291, this court affirms.

I.

Summit plans to build a pipeline to transport captured carbon dioxide across five states, including Iowa.  The pipeline would pass through Shelby County and Story County.  Reacting to the plan, the Counties passed pipeline-related ordinances.  Both ordinances impose setback, emergency response plan, and local permit requirements.  *See* **Shelby County, Iowa, Ordinance 2022-4**, arts. 8.4, 8.11, 8.3, 8.5, 8.6 (Nov. 11, 2022); **Story County, Iowa, Ordinance 311**, chs. 86.16(1)(A), (1)(C), 86.16(1)(D) (May 16, 2023).  Shelby County added an abandonment provision.  *See* **Ord. 2022-4**, art. 8.12.  And Story County added a trenchless construction requirement.  *See* **Ord. 311**, ch. 86.16(1)(B).

At the federal level, the PSA regulates hazardous liquid pipelines.  Its purpose is "to provide adequate protection against risks to life and property posed by pipeline transportation and pipeline facilities."  **49 U.S.C. § 60102(a)(1)**.  It delegates power to the Secretary of Transportation to "prescribe minimum safety standards for pipeline transportation and for pipeline facilities."  **§ 60102(a)(2)**.  The minimum safety standards "may apply to the design, installation, inspection, emergency plans and procedures, testing, construction, extension, operation, replacement, and maintenance of pipeline facilities."  **§ 60102(a)(2)(B).**  Within the Department of Transportation, the Pipeline and Hazardous Materials Safety Administration (PHMSA) regulates pipeline safety.  *See* **49 C.F.R. pts. 190–99**.

The PSA expressly preempts state safety standards: "A state authority may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation."  **§ 60104(c)**.  But it limits the scope of federal authority over location and routing:  "This chapter does not authorize the Secretary of Transportation to prescribe the location or routing of a pipeline facility."  **§ 60104(e)**.

-3-

At the state level, the Iowa Utilities Commission (IUC) (formerly, the Iowa Utilities Board) grants permits for new pipelines. *See* **Iowa Code § 479B**. The IUC has "the authority to implement certain controls over hazardous liquid pipelines." **§ 479B.1**. "The commission may grant a permit in whole or in part upon terms, conditions, and restrictions as to location and route as it determines to be just and proper." **§ 479B.9**. After a detailed application and lengthy hearing, the IUC granted Summit a permit to build its pipeline along a specified route.

Summit sought declaratory and injunctive relief that federal and state law preempted the Counties' ordinances. In two cases, the district court granted summary judgment to Summit, permanently enjoining the Counties from enforcing the ordinances. The Counties appeal.

This court reviews de novo the summary judgments. ***Torgerson v. City of Rochester***, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). "Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" ***Id.***, *quoting* **Fed.R.Civ.P. 56(c)(2)**. This court reviews permanent injunctions for an abuse of discretion. ***Randolph v. Rodgers***, 170 F.3d 850, 856 (8th Cir. 1999). "Abuse of discretion occurs if the district court reaches its conclusion by applying erroneous legal principles or relying on clearly erroneous factual findings." ***Id.*** "A trial court's determination of whether a local ordinance is preempted by state law is a matter of statutory construction and is thus reviewable for correction of errors at law." ***City of Davenport v. Seymour***, 755 N.W.2d 533, 537 (Iowa 2008), *citing* ***State v. Tarbox***, 739 N.W.2d 850, 852 (Iowa 2007).

II.

Story County passed an ordinance months before it enacted Ordinance 311. *See* **Story County, Iowa, Ordinance 306** (Oct. 25, 2022). Story County "repealed and replaced" the previous ordinance so that it would "not survive regardless of any

determination of the validity of Ordinance No. 311." The County acknowledges that the previous ordinance would be preempted. Over Story County's assertion of mootness, the district court addressed Summit's challenge to the repealed ordinance to "avoid confusion" about whether it "would survive the invalidation of" the replacement ordinance. "When a law has been amended or repealed, actions seeking declaratory or injunctive relief for earlier versions are generally moot unless the problems are capable of repetition yet evading review." *Phelps-Roper v. City of Manchester*, 697 F.3d 678, 687 (8th Cir. 2012) (en banc) (cleaned up) (holding challenges to earlier versions of an ordinance are moot when "the record does not support a reasonable expectation that [the local government] will reenact the earlier versions because the current ordinance was purposefully amended to correspond with . . . constitutional law"). Because Story County repealed the previous ordinance, Summit's challenge to it is moot.

## III.

"The Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that interfere with, or are contrary to, federal law." *Kinley Corp. v. Iowa Utilities Bd.*, 999 F.2d 354, 357 (8th Cir. 1993), *quoting Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985), *citing Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 211 (1824) (Marshall, C.J.) (cleaned up). "Congress is empowered to pre-empt state law by so stating in express terms." *Id.*, *quoting Hillsborough Cnty.*, 471 U.S. at 713. "Pre-emption fundamentally is a question of congressional intent . . . and when Congress has made its intent known through explicit statutory language, the courts' task is an easy one." *English v. General Elec. Co.*, 496 U.S. 72, 78–79 (1990), *citing Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 299 (1988) (internal citation omitted).

Under the PSA: "A state authority may not adopt or continue in force *safety standards* for interstate pipeline facilities or interstate pipeline transportation." **49 U.S.C. § 60104(c)** (emphasis added). "Congress has expressly stated its intent to preempt the states from regulating in the area of safety in connection with interstate

-5-

hazardous liquid pipelines." *Kinley*, 999 F.2d at 358. "Congress intended to preclude states from regulating *in any manner whatsoever* with respect to the safety of interstate transmission facilities." *ANR Pipeline Co. v. Iowa State Com. Comm'n*, 828 F.2d 465, 470 (8th Cir. 1987) (emphasis added). "This Congressional grant of exclusive federal regulatory authority precludes state decision-making in this area altogether and leaves no regulatory room for the state to either establish its own safety standards or supplement the federal safety standards." *Kinley*, 999 F.2d at 359.[1]

The Counties argue that their ordinances are not preempted because they are not "safety standards." In *Kinley*, this court ruled that nominally non-safety provisions are preempted by federal law if they nevertheless regulate safety. *Id.* This court rejected the state's contention that it prohibited a pipeline due to financial concerns. *Id.* Instead, it looked to evidence of the law's safety purpose—a letter expressing Iowa's "strong interest in the safety and integrity of the pipelines." *Id.* Because it regulated pipeline safety, the state's law was preempted. *Id.*

The text of the Shelby and Story ordinances focuses on safety. The Shelby ordinance repeatedly discusses pipeline safety risks. For example, the preamble states "there are several factors that would influence human safety in the event of a rupture of such a pipeline." **Ord. 2022-4.** When Story County adopted its later-repealed ordinance, it made clear its ordinance regulated "hazardous materials pipelines that pose . . . health and safety risks." It then repealed that ordinance,

------

[1]Contrary to the Counties' arguments, *ANR* and *Kinley* are applicable although they interpret the Natural Gas Pipeline Safety Act and the Hazardous Liquid Pipeline Safety Act, respectively. Congress enacted the PSA to combine and recodify these statutory predecessors "without substantive change." **Pub. L. No. 103-272**, **108 Stat. 745**, preamble. Congress's reenactment of the same preemption provision in the PSA strengthens these cases' precedential value. *See* ***Lorillard v. Pons***, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change . . . .") (internal citation omitted).

replacing it with Ordinance 311, now claiming the new ordinance "doesn't have to do with safety."

Specifically, Summit challenges three provisions of the Shelby ordinance as preempted by the PSA: setback, emergency plan, and abandonment requirements. *See* **Ord. 2022-4**, arts. 8.4 ("Separation Requirements"), 8.11 ("Emergency Response and Hazard Mitigation Plans for Hazardous Liquid Pipelines"), 8.12 ("Abandonment, Discontinuance, and Removal of Hazardous Liquid Pipelines"). It challenges two provisions of the Story ordinance as preempted by the PSA: setback and emergency plan requirements. *See* **Ord. 311**, chs. 86.16(1)(A) ("Setbacks Required"), (1)(C) ("Emergency Plan").

A.

Most ardently, the Counties argue the setbacks fall within their traditional zoning authority.[2] According to them, the setbacks are not "safety standards" under § 60104(c), and are "location or routing" regulations under § 60104(e).

The first question is: Are the setbacks "safety standards"? The Counties admit that their setbacks *consider* safety but argue they are not safety *standards*. This court looks beyond the rationale offered to evidence of the law's purpose. *See generally* **Kinley**, 999 F.2d at 359 (rejecting a non-safety rationale when evidence did "not support this position").

Other circuits have assessed whether setbacks, specifically, constitute safety standards. The Fifth Circuit held that a challenged local setback was not a safety standard. ***Texas Midstream Gas Servs. v. City of Grand Prairie***, 608 F.3d 200, 212 (5th Cir. 2010). The court observed that the setback "primarily ensures that bulky,

_____

[2]The district court found the PSA preempted the Story ordinance's setbacks. It did not address whether the PSA preempted the Shelby ordinance's setbacks, having found them preempted by Iowa law.

unsightly, noisy compressor stations do not mar neighborhood aesthetics" while acknowledging the "requirements affect fire safety." *Id.* at 211. But the court differentiated between an incidental effect and a direct and substantial effect: "A local rule may incidentally affect safety, so long as the effect is not 'direct and substantial.'" *Id.*, *quoting English*, 496 U.S. at 85, *citing Schneidewind*, 485 U.S. at 308 ("Of course, every state statute that has some indirect effect on . . . facilities of natural gas companies is not pre-empted."). When an effect "is neither direct nor substantial," it "does not undermine Congress's intent in promulgating the PSA." *Id.*, *citing English*, 496 U.S. at 85. Because the challenged ordinances' "primary motivation" was aesthetic and the effect on safety was only "incidental," the PSA did not preempt them. *Id.*

The Fourth Circuit similarly held that a challenged local setback was not a safety standard. *Washington Gas Light Co. v. Prince George's Cnty. Council*, 711 F.3d 412, 421–22 (4th Cir. 2013). The court upheld county zoning plans because "[a]t their core" the plans were "land use provisions designed to foster residential and recreational development." *Id.* at 421. Relying on *Texas Midstream*'s "incidental" distinction, the court concluded any safety concerns "would have been merely incidental to the overall purpose" which "is insufficient to justify a finding that the County Zoning Plans were, in fact, safety regulations." *Id.* at 421–22, *citing Texas Midstream*, 608 F.3d at 211.

This court holds that the Counties' setbacks are safety standards. They apply alike to economically developed and remote areas. This blanket application undercuts aesthetic, land-use, and development rationales. It suggests the effect on safety is not incidental, but rather the "primary motivation." *Texas Midstream*, 608 F.3d at 211. Further, the Shelby ordinance requires larger setbacks from buildings with vulnerable populations (*i.e.*, "a church, school, nursing home, long-term care facility, or hospital"). And the Story ordinance mentions similar facilities (*i.e.*, "retirement and nursing homes, family homes, schools, childcare homes and centers, group homes, hospitals . . . ."). The evidence supports that, at their core, the setbacks regulate safety. *Washington Gas*, 711 F.3d at 421. Their direct and substantial

effect on safety undermines Congress's express "intent to preempt the states from regulating in the area of safety." *Kinley*, 999 F.2d at 358.

This holding does not prohibit local governments from considering safety, nor prevent them from enacting all zoning ordinances, as the Counties suggest. This court emphasizes the distinction between safety *standards*—which the PSA preempts—and safety *considerations*—which the PSA does not preempt.

The Counties frame a second question: Do the setbacks regulate "location or routing" under § 60104(e)? Even if the setbacks were safety standards, the Counties argue they *relate to* location and routing, thus outside the PSA's preemptive scope. But the PSA does not limit federal authority over all "location or routing," just the Secretary's authority to "*prescribe* the location or routing of a pipeline facility." **49 U.S.C. § 60104(e)** (emphasis added). "Prescribe" means: "To dictate, ordain, or direct; to establish authoritatively (as a rule or guideline)." *Prescribe*, **Black's Law Dictionary** (12th ed. 2024). Congress uses "prescribe" to connote rules, regulations, standards, and similar directives that are particularized. *See, e.g.*, ***Chao v. Mallard Bay Drilling, Inc.***, 122 S. Ct. 738, 742 (2002) (considering the preemptive scope of a statute, which provides: "Nothing in this [statute] shall apply to working conditions of employees with respect to which other Federal agencies . . . exercise statutory authority *to prescribe or enforce standards or regulations* affecting occupational safety and health.") (emphasis added). "Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." ***Cipollone v. Liggett Grp., Inc.***, 505 U.S. 504, 517 (1992) ("a variant of the familiar principle of *expression unius est exclusio alterius*"). When "the federal government has occupied the entire field," local regulation is preempted "except the limited powers expressly ceded to the states." ***Pac. Gas & Elec. Co. v. State Energy Res. Conserv'n & Dev. Comm'n***, 461 U.S. 190, 212 (1983).

As discussed, Congress expressly preempted the entire field of hazardous liquid pipeline safety in § 60104(c). *See **Kinley***, 999 F.2d at 359. Section 60104(e) excepts the limited power to *prescribe* location or routing. Here, the agency

(PHMSA) has not dictated the location or route of Summit's pipeline. True, PHMSA regulations relate to the pipeline's location or route. But Congress's statutory language expresses its intent: the PHMSA may not adopt safety standards that *prescribe* location or routing; it may adopt safety standards that *relate to* location or routing. Section 60104(e) does not save the Counties' setbacks from preemption.

B.

The Counties argue their emergency plans provisions do not "adopt . . . safety standards" but require only an "exchange of information." The Fifth Circuit held that an analogous federal law preempted a local requirement "to provide specified procedures and safeguards to warn and protect the general public against the accidental release" of hazardous gas. *Nat. Gas Pipeline Co. of America v. R.R. Comm'n*, 679 F.2d 51, 52 (5th Cir. 1982). The parties there did not dispute that the law was a "safety regulation" under the PSA's predecessor. *Id.* at 53. Today's PSA specifically provides that the authority to "prescribe minimum safety standards" "may apply to . . . emergency plans and procedures." **49 U.S.C. § 60102(a)(2)**.

Both Counties' ordinances require documentation of compliance with PHMSA regulations. **Ord. 311**, ch. 86.16(1)(C) ("The plan may be a preliminary or draft version of an emergency response plan that would meet the requirements of the federal Pipeline and Hazardous Materials Safety Administration."); **Ord. 2022-4**, art. 8.11 (if the "PHMSA has adopted regulations specifically related to emergency preparedness, emergency response, and hazard mitigation planning," the pipeline company "shall submit . . . documentation of compliance with the PHMSA regulations.").

But the Counties also adopt requirements above and beyond those of the PHMSA. For example, the Shelby ordinance requires "a detailed plan describing how the Pipeline Company will work with the County's law enforcement, emergency management personnel, and first responders in the event of a[n] . . .

emergency or disaster." **Ord. 2022-4**, art. 8.11. The Story ordinance provides: "The County will determine whether the information in the plan is sufficient for the County to plan its own emergency response . . . ." **Ord. 311**, ch. 86.16(1)(C). These additions require more than an exchange of information; they adopt safety standards.

## C.

The Counties read the Shelby ordinance's abandonment provision as outside the scope of the PSA. The PSA grants the PHMSA authority to regulate safety "for pipeline transportation and for pipeline facilities." **49 U.S.C. § 60102(a)(2)**. It defines a "pipeline facility" as "a gas pipeline facility and a hazardous liquid pipeline facility"; a "'hazardous liquid pipeline facility' includes a pipeline, a right of way, a facility, a building, or equipment *used or intended to be used* in transporting hazardous liquid." **§§ 60101(a)(18), (5)** (emphasis added). The Counties say that abandoned pipelines are not "used or intended to be used" for hazardous liquid transportation, thus beyond the scope of the PHMSA's authority.

The issue hinges on the meaning of "used." The Counties' argument is logical only if "used" means "*presently* used." But the more natural reading of "used" here includes "past or completed action even when it is placed after the noun it modifies." *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 39 (2008) (comparing, as an example, "baked beans" and "beans baked in the oven"). As a past participle, "used" could describe a "*formerly* used" pipeline. In the statutory context, the addition of "or intended to be used" suggests Congress intended the PSA to apply more broadly than to pipelines while in use. "[I]ntended to be used" extends the PSA's reach to structures with the potential for use, even in the *future*. More generally, this court has repeatedly recognized Congress's intent that the PSA sweep broadly. *See ANR Pipeline Co.*, 828 F.2d at 470 ("Congress intended to preclude states from regulating in any manner whatsoever with respect to the safety of interstate transmission facilities.").

-11-

The Shelby ordinance incorporates the PSA's scope, deeming a pipeline abandoned "whenever the use of the Hazardous Liquid Pipeline has been discontinued such that there is no longer regulatory oversight of the Pipeline by PHMSA." **Ord. 2022-4**, art. 8.12. Because PHMSA oversight extends to abandoned and discontinued pipelines, the provision can never deem a pipeline abandoned and never become applicable.

\* \* \*

The PSA preempts the Shelby and Story ordinances' setback, emergency response, and abandonment provisions.

IV.

Iowa preemption emanates from its Constitution's prohibition of county laws "inconsistent with the laws of the general assembly." **Goodell v. Humboldt Cnty.**, 575 N.W.2d 486, 492 (Iowa 1998), *quoting* **Iowa Const. art. III, § 39A**. Its Constitution also grants counties "home rule power and authority . . . to determine their local affairs and government." **Iowa Const. art. III, § 39A**. Implementing "home rule," state law provides: "An exercise of a county power is not inconsistent with a state law unless it is irreconcilable with the state law." **Iowa Code § 331.301(4)**. "A county shall not set standards and requirements which are lower or less stringent than those imposed by state law, but may set standards and requirements which are higher or more stringent than those imposed by state law, unless a state law provides otherwise." **§ 331.301(6)(a)**.

The Counties argue that the district court misapplied Iowa's "demanding" conflict preemption standard. **Seymour**, 755 N.W.2d at 539. They contend that the "possibility" of compliance with both their ordinances and an IUC-approved pipeline route is sufficient to hold their ordinances not preempted.

-12-

But Iowa's preemption jurisprudence instructs otherwise. "When a state law merely sets a standard, a local law setting a higher standard would not conflict with the state law . . . ." *Goodell*, 575 N.W.2d at 501. However, when "the local ordinance would prohibit an activity absent compliance with the additional requirements of local law, even though under state law the activity would be permitted because it complied with the requirements of state law . . . the local regulation would be inconsistent with state law and preempted." *Id.*

*Goodell* exemplifies a statutory scheme in the second category. There, the issue was whether state regulation of animal feeding operations impliedly preempted a county ordinance requiring permits for livestock facilities. *Id.* at 502. Under Iowa law, a state agency had authority to "adopt rules relating to the construction or operation of animal feeding operations" including "requirements for obtaining permits." *Id.* (internal quotations omitted). The agency's rules required animal feeding operations to obtain a state permit to construct and operate. *Id.* Under the challenged county ordinance, livestock facilities had to obtain a local permit to construct or operate, in addition to complying with state regulations. *Id.*

> [A]ssume an operation meets state law requirements, but not the county's additional requirements. Under these circumstances, the state rules would allow construction and operation of the facility, but the county ordinance would prohibit it because the operation would not have met the additional requirements of the county's ordinances.

*Id.* at 503. Due to this conflict, the ordinance was inconsistent with state law and preempted. *Id.* The court's determination hinged on the possibility that a facility could comply with state law while not complying with local law, not the possibility that a facility could comply with both state law and local law.

By urging the possibility-of-complying-with-both approach, the Counties ask this court to invert Iowa's preemption analysis. Instead, *Goodell* instructs asking: Is it possible that a pipeline company could comply with an IUC-granted permit while not complying with a County's ordinance? If this possibility exists, the

-13-

ordinance is inconsistent with state law and thus preempted. *Goodell*, 575 N.W.2d at 501.

That possibility exists here. Iowa law gives the IUC "the authority to implement certain controls over hazardous liquid pipelines . . . to approve the location and route of hazardous liquid pipelines." **Iowa Code § 479B.1**. "The commission may grant a permit [to construct, maintain, and operate a new pipeline] in whole or in part upon terms, conditions, and restrictions as to location and route as it determines to be just and proper." **§ 479B.9**. The IUC could determine (and has determined) a pipeline route through Shelby and Story Counties to be just and proper. The Counties' ordinances could (and do) prohibit pipeline construction along that route absent compliance. So, a pipeline company could comply with the IUC's permit while not complying with the Counties' additional restrictions (as in Summit's predicament). This possibility makes the ordinances inconsistent with state law and thus preempted. *See Goodell*, 575 N.W.2d at 501. In the words of *Goodell*, the Shelby and Story ordinances are "additional requirements" that "would prohibit" building the pipeline "absent compliance," even though Iowa law would permit building the pipeline. *Id.*

The Counties heavily rely on the *Seymour* case. The court there considered whether a county's traffic ordinance was preempted by state traffic regulations. *Seymour*, 755 N.W.2d at 537. The challenged county ordinance authorized an automatic traffic enforcement system. *Id.* at 536–37. The ordinance imposed civil penalties on vehicle owners for speeding and traffic-light violations detected by the system. *Id.* The state regulations imposed criminal penalties on drivers for various conduct, including speeding and traffic-light violations. *Id.* at 539–40. State law forbade inconsistent local traffic regulation but expressly authorized local governments to regulate conduct on the roads through additional regulations. *Id.* at 540. And state law authorized municipalities to establish civil infractions and provide for enforcement. *Id.*

-14-

The court explained: "In order to be 'irreconcilable,' the conflict must be unresolvable short of choosing one enactment over the other." *Id.* at 541. "[W]hether a municipal ordinance is in conflict is . . . determined by . . . whether the ordinance permits or licenses that which the state prohibits or forbids or vice versa." *Id.* at 542. The laws in question presented "no such bitter choice." *Id.* The county's ordinance did not prohibit conduct on the roads that the state permitted; rather both prohibited the same conduct—speeding and traffic-light violations. Finding no irreconcilable conflict, the *Seymour* court held that the ordinance was not preempted by state law. *Id.* at 545.

The Shelby and Story ordinances do present a "bitter choice." The ordinances prohibit what the state permits—building a pipeline along a specified route. Unlike the state law in *Seymour*, Iowa law does not expressly cede power to local governments. Far from it, § 479B grants the IUC "*the* authority" to grant permits "in whole or in part" and "as it determines to be just and proper." **Iowa Code §§ 479B.1, 479B.9**. This delegation of power is singular, sweeping, and cedes nothing to the counties. By *Seymour*'s logic, Iowa law and the Counties' ordinances irreconcilably conflict.

Specifically, Summit challenges the Shelby ordinance's permitting requirements as preempted by Iowa Code § 479B. *See* **Ord. 2022-4**, arts. 8.3 ("Conditional Use Permits Required"), 8.5 ("Permit Application Requirements for Pipeline Companies"), 8.6 ("Permit Application Requirements for Property Owners"). It challenges the Story ordinance's authorizations and trenchless construction requirements. *See* **Ord. 311**, chs. 86.16(1)(D) ("Authorizations Required"), (1)(B) ("Critical Natural Resource Area Protections Required").[3]

---

[3]Summit also challenges both Counties' setback requirements as preempted by Iowa law. Having found their setbacks preempted by the PSA, this court need not address state law.

A.

Regarding pipeline company permitting requirements, the Counties argue the provisions merely impose higher standards. The Shelby ordinance requires companies to "submit an Application to the County Zoning Administrator for a Conditional Use Permit" after petitioning the IUC for a permit. **Ord. 2022-4**, art. 8.31. *See also* art. 8.5 (specifying the information pipeline companies must submit when applying, including details of the pipeline's proposed location). "[T]he County Zoning Administrator and the Board of Adjustment shall consider the Application according to the process and standards set forth in" the ordinance. Art. 8.33. If Shelby County denies the application, it would prohibit a pipeline company from building in a certain location, even if the IUC permits construction there. That possibility makes the pipeline company permitting requirements inconsistent with state law and thus preempted. *See **Goodell***, 575 N.W.2d at 501.

The Story ordinance similarly requires local permits. Its authorizations requirement prohibits construction until a pipeline company "obtain[s] all required federal, state, and local permits and any private easements or other land use permissions." **Ord. 311**, ch. 86.16(1)(D). Because of the same possibility—that Story County would prohibit construction, even if the IUC permits it—the provision is inconsistent with state law and thus preempted. *See **Goodell***, 575 N.W.2d at 501.

Regarding landowner permitting requirements, the Counties argue the Shelby ordinance does not prohibit Summit from negotiating with landowners. Rather, they say it merely requires a permit to execute an agreement. Iowa law requires IUC-permitted pipeline companies to negotiate in good faith with landowners before exercising their right of eminent domain. **Iowa Code § 6B.2B** (an individual acting with agency approval must "make a good faith effort to negotiate with the owner to purchase the private property or property interest before filing an application for condemnation or otherwise proceeding with the condemnation process"); **§ 479B.16** (a pipeline company with an IUC permit "shall be vested with the right of eminent domain"). The Shelby ordinance requires property owners contemplating an

easement agreement to "submit an Application to the County Zoning Administrator for a Conditional Use Permit" before executing the agreement. **Ord. 2022-4**, art. 8.32. *See also* art. 8.6 (specifying the information property owners must submit when applying, including details of the pipeline's proposed location). "[T]he County Zoning Administrator and the Board of Adjustment shall consider the Application according to the process and standards set forth in" the ordinance. Art. 8.33. If Shelby County denies the application, it would prohibit the negotiated agreement, even though Iowa law permits—even requires—good faith negotiation. That possibility makes the landowner permitting requirements inconsistent with state law and thus preempted. *See **Goodell***, 575 N.W.2d at 501.

### B.

The Story ordinance's trenchless construction requirement fares no better. The Counties argue the ability to use trenchless construction along the route approved by the IUC saves the provision. The provision requires trenchless construction of pipelines in critical natural resource and buffer areas. **Ord. 311**, ch. 86.16(1)(B). But the IUC's authority extends "to protect landowners and tenants from environmental or economic damages which may result from the construction, operation, or maintenance of a hazardous liquid pipeline." **Iowa Code § 479B.1.** Through its trenchless construction provision, Story County proports to exercise authority to protect from environmental damages resulting from construction. An IUC permit could provide alternative protection or construction methods, which the Shelby ordinance would prohibit. That possibility makes the trenchless construction requirement inconsistent with state law and thus preempted. *See **Goodell***, 575 N.W.2d at 501.

\* \* \* \* \* \* \*

The judgment in 23-3758 is affirmed. The judgment in 23-3760 is affirmed but vacated and remanded for modification to the extent it addresses Ordinance 306.

KELLY, Circuit Judge, concurring in part and dissenting in part.

I concur in the court's conclusions in Parts II, III.B, and IV, but I write separately because I disagree that the PSA preempts the setback and abandonment provisions.

It is undisputed that the PSA grants the federal government the authority to "prescribe minimum safety standards for pipeline transportation and for pipeline facilities," 49 U.S.C. § 60102(a)(2), and that these standards "may apply to the design, installation, inspection, emergency plans and procedures, testing, construction, extension, operation, replacement, and maintenance of pipeline facilities," *id.* § 60102(a)(2)(B). And all agree that "[a] State authority may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation." *Id.* § 60104(c). But the PSA also expressly states that "[t]his chapter does not authorize the Secretary of Transportation to prescribe the location or routing of a pipeline facility." *Id.* § 60104(e). So which section of the PSA governs the Counties' setback provisions?

For purposes of preemption under the PSA, we have limited guidance on what constitutes a safety standard, as opposed to a safety consideration embedded in a location proscription. *Compare Tex. Midstream Gas Servs., LLC*, 608 F.3d at 211 (concluding that the PSA did not preempt city ordinance where "setback requirement . . . require[d] a *greater* distance between the compressor station and adjacent buildings than [federal law] would . . . alone" because the setback requirement's "incidental salutary effect on . . . safety d[id] not undermine Congress's intent in promulgating the PSA, as it [was] neither direct nor substantial"), *and Wash. Gas Light Co.*, 711 F.3d at 421–22 (determining that PSA did not preempt county zoning plans because, "[a]t their core," the plans were "local land use provisions designed to foster residential and recreational development" and "[e]ven assuming safety concerns played some part in the[ir] enactment . . . , those concerns would have been merely incidental to the overall purpose of the . . . [z]oning [p]lans"), *with ANR Pipeline Co.*, 828 F.2d at 470–73 (concluding Iowa statute was preempted where it

-18-

expressly "adopt[ed safety] standards identical to the federal standards," "interpret[ed] those standards," and implemented a "hearing, permit, and inspection" regime allowing the state "to impose safety conditions upon" pipelines). In order for preemption to apply, the effect on safety must be "direct and substantial." *See Tex. Midstream Gas Servs., LLC*, 608 F.3d at 211 (quoting *English*, 496 U.S. at 85). But I am not convinced that the Counties' setback requirements fall on the side of a preempted safety standard. True, as the court points out, the setback requirements apply equally to developed and remote areas, and setback distances may vary based on the nature of the facility along the pipeline route. But the setback requirements also fit comfortably within a local land use ordinance. And such ordinances are typically, and understandably, driven by multiple concerns, including economic, environmental, and safety. The question is close. But I would conclude the setback requirements are location and routing standards that, though animated in part by safety considerations, do not have a "direct and substantial" effect on safety and thus do not amount to the type of standards that Congress expressly reserved for federal regulation.

I also disagree that the PSA preempts Shelby County's abandonment provision. Section 8.12 of the ordinance defines a hazardous liquid pipeline as "abandoned" "whenever the use of the . . . Pipeline has been discontinued such that there is no longer regulatory oversight of the Pipeline by PHMSA." In my view, § 60101(a)(5), which defines "hazardous liquid pipeline facilit[ies]" to include pipelines that are "used or intended to be used," does not cover pipelines that have been abandoned. The dictionary defines "abandoned" as "left to fall into a state of *dis*use." *Abandoned*, *Merriam-Webster.com*, https://www.merriam-webster.com/dictionary/abandoned (last visited May 29, 2025) (emphasis added). And PHMSA defines "abandoned" as "permanently removed from service." 49 C.F.R. § 195.2. Shelby County's abandonment provision expressly applies only after any pipeline is

no longer in use (or intended to be used) and federal regulatory governance has ceased.[4] It is, therefore, not expressly preempted.

_____

[4]Summit points out that one subsection of Shelby County's abandonment provision, Section 8.121, requires that it take action prior to a pipeline's disuse by notifying the County and anyone affected by the pipeline of its "intent to discontinue the use of the [p]ipeline." This may be true, but Summit fails to articulate how this subsection has a "direct and substantial" effect on safety.